**Herschel H. Campbell, Appellee, v. Chicago, Burlington and Quincy Railroad Company, Appellant.**

**Gen. No. 40,950.**

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed May 20, 1940.

POMEROY, MARTIN & BROWN, of Chicago, and KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellant; S. R. PRINCE and H. O' B. COOPER, of counsel.

SAMUEL COHEN and LEO G. HANNA, both of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover damages for personal injuries claimed to have been sustained by him as the result of a collision at a grade crossing between plaintiff's automobile, which he was driving, and a freight train operated over defendant's tracks in Centralia, Illinois. There was a jury trial, a verdict and judgment in plaintiff's favor for $20,000 and defendant appeals.

The record discloses that about ten o'clock on the evening of August 24, 1935, plaintiff was driving his automobile east on 5th street in Centralia, Illinois, and a freight train of 48 cars was going south at from 8 to 12 miles an hour. There was a collision as a result of which plaintiff was injured. The automobile struck the locomotive in the right side of the front, as plaintiff contends, while defendant contends the automobile ran head-on and struck the step on the tender. The automobile was turned to the south, plaintiff fell or was thrown from it and the wheels of the train passed over his left hand and his left foot was also injured. Afterward it was necessary to amputate the hand at a point above the wrist.

Chestnut, a north and south street, lies immediately west of the railroad tracks, the west side being paved with brick. Fifth street is 28 feet wide between the curbs and was paved. The Southern Railway Company operates a line of railroads from East St. Louis to Louisville, Kentucky, and on August 24 a through freight train left East St. Louis for Princeton, Indiana, an all night run. It passed through a number of towns, including Centralia, a city of about 12,000 inhabitants, located about 60 miles east of East St. Louis. The night was dark, quiet, clear and hot. About 10 blocks north

of the place of the accident, some switching was done. The Southern Railway Company in Centralia operates over the tracks of the defendant, Chicago, Burlington & Quincy Railroad Company, and runs south through Centralia.

There are houses on the west side of Chestnut street facing east; street lights are located at every other street corner but there were none at the 5th street crossing. About ½ to ¾ of a mile south of 5th street is an interlocking switch over the 9 railroad tracks which run south, paralleling Chestnut street. The freight train in question was on the west line of track. A sign with the word "Stop" upon it is located about 20 feet west of the west railroad track and just south of the south curb of 5th street. A cross board sign is located a short distance east of the stop sign on a post painted with alternate black and white stripes. Fastened to the top of this post is a sign upon which appear the words "Look Out for the Cars," and another "Railroad Crossing"—"9 Tracks." The train was made up of 29 loaded freight cars and 19 empty cars, being approximately 2,000 feet in length.

There were 5 men in the train crew, the engineer, fireman, head brakeman, rear brakeman and conductor; all of these except the rear brakeman were riding in the cab of the engine at the time of the accident. After the train proceeded south the rear brakeman closed the switch and got on the rear of the train.

Plaintiff testified he was driving his automobile east in 5th street and stopped at the stop sign, above mentioned, about 20 feet west of the west rail; that he looked in both directions; that he could see up the track about 200 feet if it was daytime but on account of the darkness he could not estimate how far he could see; that he saw no train, then started up slowly and was but a few feet from the west rail when he saw the southbound train too late to stop. Plaintiff's evidence is also to the effect that the headlight on the engine was not lit

and witnesses on his behalf testified that they heard no whistle or bell and that the train made little or no noise. At the time in question 4 witnesses called by plaintiff were in a one-story frame house located near the northwest corner of 5th and Chestnut streets. The front of this house, which faced east, was shown to be a little more than 63 feet from the middle of the west railroad track on which the freight train was being operated. They testified they saw no headlight and heard no whistle or bell.

On the other side, witnesses for defendant, including some of the train crew, gave testimony to the effect that they saw plaintiff driving east in 5th street at a speed of from 15 to 18 miles an hour; that he did not stop but ran into the train, striking the tender behind the cab of the engine, as a result of which the step was broken off; that the bell was continually ringing, being operated automatically; that the whistle had been sounded a number of times, first, when the rear brakeman signalled the engineer that he had closed the switch at the north end of the train for the engineer to proceed, again to notify the man in charge of the signals south of 5th street, who thereupon changed the signs on the interlocking switch notifying the engineer that he could proceed—that the track was clear, and a third time to notify the man who operated the lights that the engineer saw the track was clear.

A number of other persons testified, some for plaintiff and some for defendant but this testimony we think is unnecessary to discuss for the reason that we have reached the conclusion that the finding of the jury, to the effect that plaintiff was in the exercise of due care for his own safety, and defendant guilty of negligence, is against the manifest weight of the evidence. We think the manifest weight of the evidence is that the bell was being rung; that the whistle was sounded a number of times and that the headlight on the locomotive was lit. A great deal of testimony tending to

show the contrary was negative in character. (*Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192.)

Defendant further contends that the court erred in permitting a witness to testify, over objection, there were no gates or a watchman or lights at the crossing in question, on the ground there was no allegation in the complaint that would warrant such evidence. We think there is no merit in the objection. (*Chicago & Eastern Ill. R. Co. v. Beaver,* 199 Ill. 34; *Opp. v. Pryor,* 294 Ill. 538.) Plaintiff had the right to show, and did show by other witnesses and photographs, the condition and surroundings of the crossing of 5th street over Chestnut street and the 9 railroad tracks. The jury were properly instructed and were in no way misled as to the issue involved. The evidence was clearly admissible without resorting to the phrase *res gestae,* as counsel for plaintiff does to justify the ruling of the court, because as stated by Professor Wigmore (3 Wigmore on Evidence, sec. 1795, 1st ed.; sec. 1767, 2nd ed.), "No rule of evidence can be created or applied by the mere muttering of a shibboleth." We discuss this confusing phrase in *Martin v. Turek,* 227 Ill. App. 379, and think it is unnecessary to repeat here what we there said.

The court gave 41 instructions to the jury, 11 offered by plaintiff and 30 by defendant—too many. So far as the record discloses, no instruction was refused. We have considered the instructions and the objections made to certain of them by defendant but are of opinion there was no substantial error in the instructions.

For the reason that the verdict is against the manifest weight of the evidence, the judgment of the superior court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT, P. J., and McSURELY, J., concur.