The defendant in error, Louis Provenzano, (who will hereinafter be called the plaintiff,) filed an action on the case in the circuit court of Cook county against the Illinois Central Railroad Company, (hereinafter called the defendant,) seeking damages to his person and his motor truck which arose out of a collision on August 18, 1928. The case has been tried twice in the circuit court and has been before the Appellate Court for the First District twice, where a judgment in favor of the plaintiff for $4000 has been affirmed. A writ ofcertiorari was awarded, and the cause is here for review thereon.
The collision which gave rise to this litigation occurred at the intersection of Harrison street, in the village of Hillside, with the main west (or Omaha) line of the defendant. At that point Harrison street runs in a general *Page 194 
easterly and westerly direction and is crossed by the railroad track at an angle of thirty degrees, the railroad running northwest and southeast. The highway at this point is not paved, but from the record and photographs in evidence appears to be of gravel or macadam, the traveled surface being approximately 30 feet in width. At this crossing the railroad is slightly higher than the road, and it would appear from the photographs and maps that a truck would have to climb possibly two or three feet in the last 40 or 50 feet going over the railroad. For several hundred feet along the highway before crossing the tracks the defendant's railroad is entirely visible, the nearest obstruction to view being some greenhouses situated between 900 and 1000 feet east of the intersection. At the time of the accident plaintiff was driving a two-and-a-half-ton Mack truck, loaded with six or seven tons of gravel. As he approached the crossing a fast passenger train of the defendant was coming from the east at the rate of fifty-five or sixty miles per hour. Plaintiff testified that when he was about 40 or 50 feet from the crossing he stopped and looked; that he proceeded in low speed and then changed to second speed and looked again when he was about 20 or 25 feet from the crossing but saw nothing; that he did not look again and did not see the train until it was directly upon him, his truck being at that time actually on the tracks. On cross-examination he testified that it was about noon of a bright day; that he had good brakes on his truck and that they were in good condition; that he could have stopped, at the rate of speed at which he was traveling up the incline, within a foot or two, and stated positively that with his good emergency brake and good service brake he could have stopped in not more than two feet. He, and four witnesses for him, testified that they did not hear any bell or whistle, which was controverted by six witnesses for the defendant, who testified to the usual whistles and warnings being given. It was proved *Page 195 
that the engine was equipped with an automatic bell-ringer, which was operating a bell weighing from 80 to 100 pounds. There is much other evidence in the record, but inasmuch as the plaintiff stated the strongest case for himself and we are considering it only in the aspect most favorable to him, it will be unnecessary to go further into the details.
The original declaration consisted of two counts, the first being based upon an alleged failure of the defendant to ring a bell and blow a whistle as prescribed by statute, and the second on general negligence. The original declaration was filed on December 13, 1928. One week thereafter this court handed down its opinion in Greenwald v. Baltimore and OhioRailroad Co. 332 Ill. 627, whereupon the plaintiff filed his amended declaration, restating the two original counts and adding as a third, one attempting to charge willful and wanton misconduct. The case was tried upon this declaration of three counts.
There were fourteen errors assigned in the Appellate Court and there are seven assigned here. In order to dispose of all of these assignments we find it necessary to decide only two points: (1) Is there any evidence of willful or wanton misconduct on the part of the defendant? and (2) Is there any evidence, taken in its aspect most favorable to the plaintiff, which shows that he was in the exercise of due care and caution for his own safety at the time and place of the accident? If there is no evidence showing willful and wanton misconduct on the part of the defendant the third count cannot be sustained, and it is equally apparent that neither of the other counts can stand if there is no evidence tending to show that the plaintiff was in the exercise of due care and caution for his own safety at the time and place in question.
In order to constitute willful and wanton misconduct the injury must either have been intentionally inflicted, or produced by acts so grossly negligent as to exhibit a reckless disregard for the safety of others. (Brown v. Illinois *Page 196 Terminal Co. 319 Ill. 326.) The only evidence for the plaintiff tending to show negligence on the part of the defendant was to the effect that some of the witnesses did not hear a bell or whistle, and evidence tending to show that the speed of the train was something between forty-five and sixty miles per hour. The testimony of the witnesses to the effect that they heard no bell or whistle was merely negative in its character and did not tend to raise an issue of fact as to whether or not the whistle was blown or the bell rung. (Morgan v. New YorkCentral Railroad Co. 327 Ill. 339.) However, even if it be taken as true that no bell was rung or whistle sounded, it would be nothing more than an act of negligence. The same is true as to the speed at which the train was running, even if it be assumed at the highest estimate of sixty miles per hour. The public interest requires, and the law permits, that passenger trains may be operated at such speed as may be consistent with a due regard for the safety of the passengers and those persons who are, in the exercise of due care for their own safety, traveling on the highways over and across the railroad tracks. (Chicago and Northwestern Railroad Co. v. Dunlevy, 129 Ill. 132; Partlow v. Illinois Central Railroad Co. 150 id. 321.) There being no evidence showing or tending to show that the defendant willfully or intentionally injured the plaintiff and no evidence of any circumstance exhibiting a reckless disregard for his safety, there should have been a directed verdict as to the third count of the declaration.
Upon the first and second counts the plaintiff is in no better position than upon the third. In Greenwald v. Baltimoreand Ohio Railroad Co. supra, this court used the following language: "The rule has long been settled in this State that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized *Page 197 
that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence." InAmerican Nat. Bank v. Woolard, 342 Ill. 148, we stated the rule as follows: "In the absence of evidence on which a jury could in the eye of the law reasonably find in favor of the party holding the affirmative of an issue, a motion to direct a verdict against the party so holding the affirmative should be allowed. Evidence sufficient to defeat such a motion must be evidence upon which the jury could, without acting unreasonably in the eye of the law, decide in favor of the party so having the affirmative."
Examining plaintiff's own testimony in the light of the authorities in this State and in connection with the photographs of the crossing and the exact surveys in evidence, we find these circumstances: That he was of sound physique, twenty-five years of age, and had good eye-sight and hearing; that the truck which he was driving was in good mechanical condition, with good service brake and good emergency brake; that it was a bright day, and from the position where he admitted last looking down the railroad tracks he could see to the greenhouses, which were shown by the survey to be between 900 and 1000 feet from the crossing; that he could have stopped his truck, at the rate of speed at which he was going, within not more than two feet at any time during the last 25 feet of his journey toward the scene of the accident; that he did not look at the time the train was bearing down upon him and did not see the train until his truck was actually upon the crossing; that he was familiar with this crossing, had been familiar with it for more than twenty months, *Page 198 
and had hauled several loads across it on the very day of the accident. He sought to explain his failure to look by stating that he had to watch the road, and that if he stopped on the incline he could not start again without first backing to the bottom of the grade. There was no evidence, however, that stopping and then backing to the bottom of the grade would have been in anywise dangerous or other than a slight inconvenience to him. Plaintiff's own evidence not only fails to establish due care on his part, but it affirmatively shows him to have been guilty of contributory negligence.
The judgments of the Appellate Court and the circuit court will be reversed.
Judgments reversed.