Glen Carrell, Administrator of Estate of Ruthe Carrell, Deceased, Appellee, v. New York Central Railroad Company, Lessee of Cleveland, Cincinnati, Chicago and St. Louis Railway Company, Appellant.

Gen. No. 9,365.

484

Opinion filed February 24, 1943.

SAMUEL W. BAXTER and CHARLES P. STEWART, both of Cincinnati, Ohio, and KIGER & DILSAVER, of Mattoon, for appellant; RUSSELL B. JAMES, of Mattoon, of counsel.

CARSON & APPLEMAN, of Urbana, and WILLIAM K. KIDWELL, of Mattoon, for appellee; JOHN ALAN APPLEMAN, of Urbana, of counsel.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

The defendant, the New York Central Railroad Company, a corporation, has appealed from a judgment in the sum of $3,500 which was entered against the appellant and in favor of plaintiff appellee, Glen Carrell, administrator of the estate of Ruthe Carrell, deceased, after a trial by jury in the circuit court of Coles county, Illinois. Plaintiff had filed suit for the benefit of the two minor children as next of kin of said intestate deceased, who was struck and killed on August 31, 1940, by the engine of a passenger train proceeding westward on appellant's tracks while the intestate was attempting to walk across the track, at a point where the latter crosses Division street in the city of Charleston, Illinois.

The complaint consisted of seven counts. The first count alleged negligence by defendant in failure to maintain a lookout for persons crossing its tracks on said right of way or to observe intestate; in failing to give any warning signal or to sound any bell or whistle when its train approached the crossing, or to

erect and maintain warning signals, and in approaching said crossing at a high and dangerous rate of speed, to-wit: 90 miles per hour, and thereby negligently striking and causing the death of Ruthe Carrell. The second count similarly charges said alleged acts as being wanton and wilful misconduct, so proximately causing said death. The third count alleged negligence in operating the train. The fourth count alleged negligent failure to ring a bell or blow a whistle as required by statute therein cited. The fifth count alleged the crossing to be in a populated business and residential district of said city, used by many persons and vehicles in crossing the railroad; obstructions to the view of such persons by trees and other obstacles, and negligent failure to erect reasonable warning appliances and safeguards to give adequate notice and warning of approaching trains. The sixth count alleged the negligent crossing of said street by defendant's trains at a high and dangerous rate of speed of 90 miles per hour, and so great as to render the blowing of the whistle and ringing of.a bell on the engine unavailing as a reasonable warning of the approach of its train. The seventh count alleged wanton and wilful misconduct in defendant's knowledge of amount of travel and of obstruction to the view of persons crossing said track and a conscious indifference to surrounding circumstances and conditions in driving the train at a high and dangerous rate of speed without adequate warning and notice, approximately causing said death.

Defendant filed a motion to strike certain counts and paragraphs of the complaint, which was denied by the court and issue was joined in defendant's answer by denying all allegations of negligence or wilful and wanton misconduct and denying the exercise of ordinary care for her own safety by Ruthe Carrell.

Error is assigned by appellant in the court's denial of plaintiff's motions for a directed verdict as inter-

posed at the close of plaintiff's evidence and all of the evidence; in the admission and refusal to admit certain testimony and in the giving or refusal of certain instructions as indicated in the motions; in denial of motions for judgment notwithstanding the verdict for new trial and in arrest of judgment and in entering judgment on the verdict.

Defendant appellant's railroad tracks extend in an easterly and westerly direction through the city of Charleston, crossing Division street which runs in a northerly and southerly direction at a right angle thereto. Railroad street extends east and west along the southerly side of the right of way and across Division street. Immediately south of the crossing, Division street "jogs" east for a distance equaling the width of said street and thence again continues northward across and beyond the tracks. The Brown Shoe factory, where Mrs. Carrell was employed, is located on the west side of Division street approximately 100 feet south of appellant's railroad tracks, between which tracks and factory, a driveway leads into the latter. On the east side of Division street are located several small businesses, including two restaurants, opposite the factory. Along the south side of Railroad street and east of Division street, are located several residences and concrete footwalks and a row of trees shown on photograph, whose branches extend outward above the southerly half of Railroad street, there being no buildings on the northerly or track side of Railroad street which leaves the tracks open to view from their southerly side along Railroad street for a distance of 705 feet east to the depot. The distance from the building at the southeast corner of Division and Railroad streets to the south rail of the tracks is 65 feet, as measured by County Surveyor Miller. The sidewalk on the east side of Division street extends northward on an upgrade to the tracks at a height of 3 or more feet above the street level and at an incline of

about 6½ per cent. North of the "jog" referred to and the track, this walk extends on northward along the west side of Division street. Deceased resided upon Division street, two or three blocks north of the tracks. The evidence tended to show certain rough and uneven places in the pavement on the upgrade incline south of the tracks. On both the southerly and northerly approaches to the crossing, usual cross-arm "railroad crossing" signs are located. The photograph, admitted as defendant's exhibit 1 by stipulation of parties, did not show the crossing but showed Railroad street and the depot south of the tracks and the area along and north of the tracks to and beyond the depot in an easterly direction from Division street. The depot and platform was located a distance of 705 feet or about 2½ blocks east of the walk on Division street and on the south side of the tracks; the depot building standing back 23 feet distant from the south rail of the track. Between Division street and the depot on the south side of tracks, three telegraph and two other poles and a post or barrier for catching mail bags were located at intervals along the right of way. Opposite the depot and along the northerly side of the tracks stood certain elevators and other buildings. Eastwardly along the tracks at a point 1,430 feet from the walk or more than one fourth of a mile distant from Division street a railroad signal tower was located. The tracks were level, straight and open to vision from the crossing to and beyond the tower for three fourths of a mile, from where they curved off in the distance. Defendant's passenger train was running about 20 minutes late and approaching from the east toward the west at about 10:15 or 10:20 a. m., on the morning of the occurrence, without making a stop at Charleston; its first stop being at Mattoon about 10 miles to the west. According to the engineer and fireman in charge of the train, it was then proceeding about 70 or 75 miles an hour, while certain witnesses

of the plaintiff estimated its speed to be from 70 or 75 to 90 miles per hour, one of plaintiff's witnesses stating that its speed may have been 35 miles per hour. The trainmen testified that the bell and whistle of the engine were rung and kept blowing while proceeding through the city of Charleston and while approaching the crossing. Four witnesses for the plaintiff stated that they did not hear the bell nor the whistle and a fifth witness, Reynolds, testified that no bell nor whistle was sounded. Deceased Ruthe Carrell, aged 22 years, resided on Division street with her husband and two minor children of the respective ages of 2 and 4 years, and was employed at the shoe factory. She walked to and from her home each day over said crossing to the place of her employment. Her husband was employed in a broom factory, their earnings supporting the family. On the morning of her death, Mrs. Carrell left her place of employment at the factory shortly before 10 o'clock and proceeded eastward across Division street where she made some purchases in a restaurant. She then walked northward along the walk on the east side of Division street, passed other buildings to the southeast corner of Railroad and Division streets, and then proceeded north directly across the "jog" in said street and over Railroad street to the incline paving leading up to and across the tracks toward her home. She was struck while proceeding across the south track and was thrown by the engine a distance of 60 or 70 feet westward, where her body lay on the south side of the track. She was not seen by either the engineer or the fireman as she approached the crossing and the train proceeded westwardly without their knowledge of what had happened. The engineer sat at the window on the right or northerly side of the engine and the fireman was seen by a witness who was sitting on his residence porch on the south side of Railroad street to leave his seat after the train had passed the depot and was not then at his

usual place of observation on the south or left side of the engine. Plaintiff's witnesses say that she walked up the incline toward the track at a normal gait and did not change her pace at any time and that she did not trip nor stumble. Plaintiff stresses the uneven condition of the sidewalk at that point. Two women named Richardson and Drury who were also employed at the shoe factory, had entered an automobile which was parked west of Division street between the factory and tracks in which automobile they were then leaving their place of work, and both saw the oncoming train and one remarked that she, Mrs. Carrell, would be hit. Plaintiff's witness Harriett Drury, testified to seeing the train approach and strike Mrs. Carrell as she was attempting to walk to and across the track at a normal gait. From their position, west of where she was walking up the incline, witness was able to see and did see the oncoming train and Mrs. Carrell's apparent danger, although they were seated on a lower level than that on which plaintiff's intestate was walking immediately before and when she was going upon the tracks. Witness Drury was the only witness who saw the train strike her. Witness Reynolds testified that he went from his work at the factory, immediately following Mrs. Carrell across Division street to his father's restaurant on the east side thereof, where she made purchases and then came out and that he was standing at the southeast corner of Division and Railroad streets when she proceeded northward across Railroad street and up the incline which he said was rough and uneven; that she was leaning forward and proceeding in a normal manner and at a point about 10 feet from the track, she looked eastward in the direction from which the train came; that he last saw her proceeding about 5 feet from the track, saw the train approaching, but did not see it strike her; that he later went toward the point where her body lay, but not up to the body. The condition at the crossing and

the view eastward toward and beyond the depot was detailed by several witnesses and by consent of the parties, was viewed by the jury. Aside from the scattered posts between Division street and the depot, it appeared from the evidence and from the photograph, that nothing could have obstructed her view eastward from the point in the center of Railroad street until the time that she stepped upon the track. It was further shown that the track was straight and level to the east for three fourths of a mile and that the weather was clear and the pavements dry on that morning. Others observed the train and saw her danger. It is patent from the evidence that the unfortunate intestate, then proceeding homeward from her place of employment over a familiar crossing, did not hesitate, stop nor change her pace nor apparently observe her danger. Witness Reynolds spoke of her glancing eastward at a point 10 feet south of the track and it was contended by plaintiff that the rough condition of the walk, coupled with the rate of speed at which the train was approaching, the absence of a gate or light flash or other signal except the ''Railroad Crossing'' sign at the crossing, which was much used by the public at that point and the necessity of observing the condition of the walk when approaching the track, created conditions presenting conflicting questions of fact which were properly submitted to and passed upon by the jury, both as to the issues of negligence on the part of the defendant company and the exercise of due care by the intestate. The jury, in special verdicts found the defendant not guilty of wanton and wilful misconduct; found defendant guilty of negligence and the plaintiff and plaintiff's intestate in the exercise of due care.

The foregoing is the substance of what we deem to have been the material testimony. It is given more fully because we hold the determining issue and assignment of error before this court to be whether or

not as a matter of law, prima facie proof of the necessary elements constituting plaintiff's alleged cause of action is shown by the evidence, facts and circumstances in evidence and reasonable or legitimate inferences therefrom.

Concerning the motions interposed by the defendant for directed verdicts in its favor and for judgment notwithstanding the verdict which were denied by the court, the applicable rule was set forth by this court in the cases of *Kane v. Wehner,* 312 Ill. App. 391, 399, 39 N. E. (2d) 51, and *Gillett v. Williamsville State Bank,* 310 Ill. App. 395, 34 N. E. (2d) 552; *Sturgeon v. Quarton,* 316 Ill. App. 308, 44 N. E. (2d) 766 (Abst.), and quoted with approval in the recent case of *Dregne v. Five Cent Cab Co.,* 313 Ill. App. 539 (first district) since affirmed by the Supreme Court, as follows: "Upon a motion of the defendant for a directed verdict, the court can only determine whether or not there was any evidence, which, with all reasonable inferences therefrom, viewed in the light most favorable to the plaintiff, tended to prove the material allegations of the complaint or some count thereof. If there was such evidence, it became the duty of the trial court to deny the defendant's motion for a directed verdict and to submit controverted issues of fact to the jury, subject only to the giving of proper written instructions by the court as to the law applicable thereto. A motion to direct a verdict should be allowed if, when all the evidence is considered, with all reasonable inferences to be drawn therefrom in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case." *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270, 170 N. E. 247. These principles, in varying language, have been frequently announced and applied under the particular facts and circumstances arising in numerous cases which have been reviewed by the Supreme and Appellate Courts of this

State. The same rule is applicable in passing upon a motion for judgment notwithstanding the verdict as in motions for directed verdicts. *Synwolt v. Klank,* 296 Ill. App. 79, 15 N. E. (2d) 895; *Larimore v. Larimore,* 299 Ill. App. 547, 20 N. E. (2d) 902. In either case, if there is no evidence before the jury which, with reasonable or legitimate inferences therefrom, when viewed in the light most favorable to the plaintiff, tends to prove all of the necessary elements of the plaintiff's cause of action, the motion should be allowed by the trial court, and a failure to allow such motion becomes reversible error.

Upon the issues of negligence, the evidence was conflicting. We find no evidence of wanton and wilful misconduct and the jury also so held by its special verdict. The controlling question here is whether or not the deceased, under the record, as a matter of law, was shown to be in the exercise of due care for her own safety as she proceeded along the crosswalk and when she stepped upon the track, at and immediately before the time that she was struck by the train. If she was in a position to look down the track with unobstructed view and see the oncoming train, it thereupon became her duty under the law as a matter of ordinary care, to stop, which a pedestrian can do at any time, and to permit the approaching train to cross while she waited in safety on the walk adjoining. The testimony clearly shows that aside from the posts appearing on the photograph and described in the evidence, and which under the facts shown, could not have prevented the view of an oncoming train, there was nothing to obstruct her view for a distance of 705 feet eastward between the walk on Division street and the railroad depot; that it was possible by the ordinary use of her faculties, for her to have so gained an unobstructed view to and beyond the depot from a continuous distance of at least 20 to 30 feet south of the track before she stepped upon it and to thus ob-

serve that the train was in fact approaching from the east. While the speed of the train was rapid, its approach was visible and apparent to others and her danger was also apparent to other witnesses of the plaintiff and could have been seen by her if she had also exercised ordinary care in looking. Only one witness, who also saw the oncoming train, testified that she at any time looked up the track and that was at a distance of 10 feet away, after which she proceeded to her unfortunate death.

In repeated instances, cases involving varying conditions wherein the deceased or injured person was able to see an oncoming train in time to stop before going or driving upon the crossing, and failed to see the train or imminent danger, whether they did or did not look, the Illinois courts of review have held under the particular factual situations therein presented that due care was not shown and that as a matter of law the necessary elements of a cause of action were not proven. *Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192, 191 N. E. 287; *Greenwald v. Baltimore & Ohio R. Co.*, 332 Ill. 627, 164·N. E. 142; *Adair v. Alton R. Co.*, 299 Ill. App. 626, 20 N. E. (2d) 170 (Abst.); *Goodman v. Chicago & Eastern Illinois Ry. Co.*, 248 Ill. App. 128; *Briske v. Village of Burnham*, 379 Ill. 193, 200, 39 N. E. (2d) 976. It is contended by appellee that the reasoning which prevailed in the case of *Blumb v. Getz*, 366 Ill. 273, 8 N. E. (2d) 620 is applicable to the facts herein. It may be noted that the learned justice who prepared the majority opinion in that case later discussed and applied the rule which we feel impelled to follow herein, involving facts showing failure to see a visible railroad crossing barricade and reflector, in the court's unanimous opinion *In re Briske v. Village of Burnham, supra.* It is there said at page 200, concerning such failure, that "The conclusion is inescapable, under these circumstances, that Jakubcyk could and would have stopped his car had he used his

powers of observation. The law does not permit him to say that he did not see the obstruction when, if he had properly exercised his faculty of sight, he would have seen the barrier. (*Thomas v. Buchanan*, 357 Ill. 270; *Dee v. City of Peru*, 343 id 36.)" . . ."The law will not tolerate the absurdity of permitting one to testify that he looked and did not see the danger when the view was unobstructed and where, if he had properly exercised his sight, he would have seen it." Quoting further (201) "It is true, as plaintiff maintains, that contributory negligence is ordinarily and preeminently a question of fact to be decided by a jury. Contributory negligence becomes, however, a question of law when it can be said that all reasonable minds would reach the conclusion, under a particular factual situation, that the facts did not establish due care and caution on the part of the person charged therewith." (*Thomas v. Buchanan, supra*, 192 N. E. 215; *Illinois Cent. R. Co. v. Oswald*, 338 Ill. 270, 170 N. E. 247.) "In such cases, the court should instruct the jury to render a verdict for the defendants. (*Wilson v. Illinois Cent. R. Co.*, 210 Ill. 603.)" 71 N. E. 398. The judgment of the Appellate Court (*Briske v. Village of Burnham*, 308 Ill. App. 531) reversing the trial court and entering judgment for defendant notwithstanding the verdict was thereupon affirmed. In the case of *Provenzano v. Illinois Cent. R. Co., supra,* wherein a gravel truck was driven onto a familiar railroad crossing and was struck by an oncoming train which could have been seen by the injured truck driver for a distance of 900 to 1,000 feet, but was not seen by him, it was contended that he was obliged to watch the macadam road and incline which interfered with his seeing the oncoming train and that he would have been obliged to stop and back down a dangerous incline to avoid injury. It was held that this condition of the highway and incline did not excuse his failure to see and observe the oncoming train and his right of recovery was denied.

While the regrettable facts herein are such as to arouse the natural sympathy that exists in a case of this kind, the rule of law in this State is well established that a railroad company, operating of necessity on fixed tracks and over highway crossings, which prevent its trains from stopping within a short distance, creates a hazardous condition in which ordinary care and prudence require that the party approaching a crossing either in a vehicle or as a pedestrian, do so with a degree of care commensurate with such known danger, and the failure to look and see the oncoming train or to look and not to see such train, when it is evident from the testimony that the prevailing conditions permit of such observation, constitutes a failure to show such ordinary care and prudence which, as a matter of law, would permit recovery. *Dee v. City of Peru, supra, Greenwald v. Baltimore & Ohio R. Co., supra; Wilson v. Illinois Cent. R. Co., supra.* For want of such evidence of due care, the question thereupon became one of law to be determined by the court from the record, and not one of fact for the determination of the jury, and this court holds as a matter of law that necessary proof of due care was not made by the plaintiff. *Dee v. City of Peru* and citations, *supra.*

In view of our holding against plaintiff's right of recovery under the law and the evidence herein, we need not pass upon further assignments of error by the appellant.

The motions of the defendant for a directed verdict of not guilty, at the conclusion of the plaintiff's testimony or all of the testimony, and for judgment notwithstanding the verdict, should have been granted by the court below. Such failure constituted reversible error. The judgment of the circuit court of Coles county is therefore reversed and judgment is entered under the statute by this court in favor of the defendant and against the plaintiff herein, in bar of suit and for costs.

*Judgment reversed and judgment for defendant.*