(No. 27263.—)

GLEN CARRELL, Admr., Appellant, *vs.* THE NEW YORK
CENTRAL RAILROAD COMPANY, Appellee.

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 12, 1944.*

F. T. Carson, John Alan Appleman, and William K. Kidwell, for appellant.

Samuel W. Baxter, Charles P. Stewart, and Kiger & Dilsaver, (Russell B. James, of counsel,) for appellee.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiff, Glen Carrell, administrator of the estate of Ruthe Carrell, deceased, on behalf of himself and his two minor children, brought an action in the circuit court of Coles county against the defendant, the New York Central Railroad Company, to recover damages for his wife's death on August 31, 1940, when she was struck by a train operated by defendant at its Division street crossing in the city of Charleston. Defendant's motions for a directed verdict, at the close of plaintiff's evidence and, again, at the close of all the evidence, were denied. A jury returned a verdict of $3500 in favor of plaintiff. Special interrogatories propounded to the jury were answered negatively as to Ruthe Carrell's contributory negligence and defendant's wilful and wanton conduct, and affirmatively as to defendant's negligence being the proxi-

mate cause of Ruthe Carrell's death. Motions for a new trial, in arrest of judgment. and for judgment notwithstanding the verdict, were overruled, and judgment was rendered on the verdict. Upon appeal, the Appellate Court for the Third District reversed the judgment, without remanding, and entered judgment for defendant and against plaintiff, in bar of suit and for costs. *Carrell* v. *New York Central Railroad Co.* 317 Ill. App. 481. We have granted plaintiff's petition for leave to appeal.

Division street, a north and south street, is intersected by defendant's tracks, running east and west. Railroad street, an east and west street, is adjacent to and parallels the railroad right of way on the south. Division street "jogs" east, immediately south of the crossing at Railroad street, for a distance equaling its own width. According to the evidence, there was no flagman stationed at the crossing, no flasher or other signals, nor any barriers, excepting ordinary crossarm "railroad crossing" signs, installed at its southerly and northerly approaches. Along the south side of Railroad street, east of Division street, are located several residences, concrete footwalks and a row of trees, the branches of which extend outward above the southerly half of the street. There are no buildings between the north side of Railroad street and the railroad tracks. A depot and platform, 705 feet east of the walk on Division street is located about 23 feet south of the south track. Between Division street and the depot on the south side of the tracks, three telegraph and two other poles and a post or barrier for catching mailbags are located at intervals along the right of way. Opposite the depot, north of the tracks, stand several elevators and other buildings. Eastwardly along the tracks, at a point 1430 feet from the walk, a tower signal is located. The tracks are level, straight and open to vision from the crossing to and beyond the tower for three quarters of a mile. From Division street, for at least 35 feet south of

the south track, an unobstructed view, except for the five poles, is afforded for a distance of 705 feet east to the depot. Division street crossing is used by a considerable volume of vehicular and pedestrian traffic, consisting of farmers, factory employees and school children.

August 31, 1940, defendant's passenger train was late commencing its trip from Indianapolis, and approached the crossing in Charleston from the east toward the west at about 10:15 or 10:20 A. M. without stopping, its first stop being Mattoon, about ten miles to the west. According to the engineer and fireman in charge of the train, it was then proceeding about 70 to 75 miles an hour. Several witnesses for plaintiff estimated its speed to be 70 or 75 to 90 miles per hour. One of plaintiff's witnesses testified its speed may have been 35 miles per hour. The trainmen testified that the bell and whistle of the engine were rung and kept blowing while proceeding through Charleston and while approaching the crossing. Four witnesses for plaintiff stated they did not hear the bell or whistle. Carl Reynolds, a fifth witness, testified that no bell or whistle was sounded.

Ruthe Carrell, the deceased, resided on Division street, about two or three blocks north of the railroad. She was employed in a shoe factory located on the west side of Division street, about 100 feet south of the railroad right of way. She customarily walked to and from her place of employment. On the morning of August 31, 1940, she left the factory shortly before ten o'clock and entered a restaurant on the east side of Division street, opposite the shoe factory. From the restaurant, she turned northward toward her home. She was struck while proceeding across the south track of defendant's railroad crossing. The evidence shows that the sidewalk on Division street south of Railroad street is on the east side of the street. North of Railroad street it is on the west side, as it crosses over defendant's railroad. Immediately south

of the tracks there is an incline of three feet in the last forty-five feet, or approximately a 6½ per cent grade. South of the tracks the sidewalk on the incline contained rough and uneven places. Neither the engineer nor the fireman saw Ruthe Carrell as she approached the crossing, and the train proceeded westward to Mattoon without their knowledge of what had happened. Immediately prior to the accident, Harriett Drury and Katherine Richardson, employees of the shoe factory, were preparing to leave the factory grounds in an automobile which had been parked in a space between the factory and the railroad right of way. The automobile was facing east toward Railroad street, affording its passengers a view of the occurrence. Harriett Drury testified she saw the train coming "just a few minutes before it hit, before the accident happened;" that she saw the engine strike Ruthe Carrell and pass the crossing; that Katherine Richardson directed her attention to Mrs. Carrell's danger when the latter was south of the tracks on Division street, proceeding north; that she was ascending the grade in a leaning position, walking slowly; that she did not change her pace at any time, and did not trip or stumble. Carl Reynolds, previously mentioned, also testified he observed Ruthe Carrell from the time she left the restaurant and that, when about ten feet south of the tracks, she looked east in the direction of the oncoming train.

The principal issue on this appeal is whether defendant's motions for a directed verdict and for judgment notwithstanding the verdict should have been granted. A motion to direct a verdict should be allowed if, when all the evidence is considered, with all reasonable inferences to be drawn therefrom in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case. (*Illinois Central Railroad Co.* v. *Oswald,* 338 Ill. 270.) The same rule is applicable in passing upon a mo-

tion for judgment notwithstanding the verdict. *Goodrich* v. *Sprague,* 376 Ill. 80.

A duty devolves upon persons about to cross a railroad track to take proper precaution to avoid .accident, to be on the alert for possible danger and not recklessly to go upon the track. Railroad crossings are generally recognized to be dangerous places, and must necessarily be approached with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution in proceeding over a railroad crossing the general knowledge and experience of mankind condemns such conduct as negligence. (*Provenzano* v. *Illinois Central Railroad Co.* 357 Ill. 192; *Greenwald* v. *Baltimore and Ohio Railroad Co.* 332 Ill. 627.) One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track upon the assumption that a bell will be rung or a whistle sounded. No one can assume there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law considers obnoxious a contention to the effect that a person looked but did not see a train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. *Greenwald* v. *Baltimore and Ohio Railroad Co.* 332 Ill. 627; *Schlauder* v. *Chicago and Southern Traction Co.* 253 Ill. 154.

Plaintiff maintains it cannot be said, as a matter of law, that one crossing a railroad track is bound to look, as there may be circumstances excusing such failure. (*Gills* v. *New York, Chicago and St. Louis Railroad Co.* 342 Ill. 455; *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 Ill. 623.) In the *Gills case,* the reason plaintiff, driver of the demolished truck and who was himself injured, did not see the approaching train,

was "because of the background of the freight train and the smoke of the locomotive that had just passed; that there were from thirty to fifty cars in the freight train, and that when he looked up and down the track after the freight train passed he thought he was in the clear and saw no approaching train." This court held, in effect, that, under the circumstances there existing, it was for the jury to decide whether his conduct constituted contributory negligence, as a matter of law. *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 Ill. 623, is to similar effect. *Provenzano* v. *Illinois Central Railroad Co.* 357 Ill. 192, invoked by defendant, holds that the failure of a truck driver to observe an oncoming train is not excused because of his claimed obligation to concentrate his attention on a macadam road leading to a railroad crossing.

Here, the undisputed evidence shows that one approaching the crossing from the south, as did Ruthe Carrell, had an unobstructed view at least 705 feet to the east, from a point thirty-five feet south of the tracks. In fact, plaintiff, although stressing the unimportance of the evidence concerning lack of obstruction to view, concedes that Mrs. Carrell *did* look and *did* see the train, and advances as a possible excuse for her being struck, the claimed necessity to focus attention upon her footing, owing to the broken, rough and irregular condition of the walk leading up to the tracks and the sharpness and steepness of the incline. Plaintiff argues that decedent, having looked when approximately ten feet away from the south track, at a time when the train was from 800 to 1100 feet away, had a right, as a reasonably prudent person, under the circumstances, to believe it would be traveling at a reasonable rate of speed, and to assume that she had ample time to cross in safety in the absence of a whistle or warning signal apprising her of her danger. *Blumb* v.

*Getz*, 366 Ill. 273, involving the death of a pedestrian struck by an automobile upon a highway, is principally relied upon to sustain this argument. Observing: "It was not negligence *per se* for the deceased, a pedestrian, to be upon the highway. As a matter of common knowledge, pedestrians upon highways running through the country use, and have a right to use, such highways, as well as the autoist, and both hold a mutual obligation, each to the other, to observe their reciprocal rights," we held that the question of contributory negligence was preeminently a fact for the consideration of the jury, and that "the jury might take into consideration in its deliberations the fact, if it was a fact, that the pedestrian may have observed the coming automobile and believed that if it observed the speed law he would have ample opportunity, with safety, to step into the highway for the purpose of retrieving the glove which he had dropped. If the automobile was far enough away at the time to have justified a person in the exercise of ordinary care to have acted as the plaintiff did, it would not necessarily indicate such a lack of care on the part of the plaintiff as would amount, in law, to negligence."

The observations made in the *Blumb case* upon which plaintiff places reliance are not applicable to railroad crossing cases. A highway motorist, presumably being in control of his automobile, a maneuverable conveyance, can readily bring his machine to a stop or change its course out of the sphere of danger. This is not true of railroads, which are engaged in the performance of a business of a quasi-public nature, and, in carrying out the purposes for which they are created, must necessarily often operate their trains at such a high rate of speed they cannot be brought to a sudden stop without endangering the lives and safety of the passengers. Moreover, trains travel on fixed tracks, and it is impossible for them to turn

aside or change their course in order to prevent injury to a person attempting to cross the tracks when a train is approaching. Where a railroad train and a person traveling on a highway each approaches a railroad crossing at the same time, it is not the duty of the company to stop its train, but is, instead, the duty of the traveler, in obedience to the known custom of the country, to stop and not attempt to pass in front of the advancing train. *Newell* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 261 Ill. 505.

In the present case, the undisputed evidence shows that, notwithstanding an unobstructed view of the approaching train, Ruthe Carrell proceeded toward the railroad crossing and to her death. Under any of the alternatives suggested, namely, whether she looked and did not see the train, whether she failed to look, or, under plaintiff's theory, that she did look and did see the train, taking the evidence in its light most favorable to plaintiff and giving him the benefit of all favorable legitimate inferences arising therefrom, the evidence conclusively shows that Ruthe Carrell was not in the exercise of due care for her own safety at and just prior to the time of the accident, and, conversely, that she was contributorily negligent as a matter of law. It follows that the trial judge should have either directed a verdict in favor of defendant or entered judgment in its favor notwithstanding the verdict. Accordingly, the Appellate Court properly reversed the judgment of the circuit court without remandment. *Bartolucci* v. *Falleti*, 382 Ill. 168; *Darmody* v. *Kroger Grocery and Baking Co.* 362 Ill. 554.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*