**Harold G. DAVIS, Plaintiff,**

v.

**CHICAGO, ROCK ISLAND AND PACIF-
IC RAILROAD COMPANY, a Cor-
poration, Defendant.**

**Civ. A. No. P-1733.**

United States District Court
S. D. Illinois, N. D.

April 24, 1959.

Frederick W. Allen, Peoria, Ill., for plaintiff.

Eugene Johnson, Miller, Westervelt & Johnson, Peoria, Ill., for defendant.

MERCER, Chief Judge.

Plaintiff filed this action for damages for personal injuries resulting from a collision between a car driven by plaintiff and defendant's switch engine at a grade crossing on 45th Street, Rock Island, Illinois. Upon the trial the jury rendered the verdict in plaintiff's favor for damages in the amount of $7,500. Ruling upon defendant's motion for directed verdict at the close of all the evidence in the case was reserved and the cause is now before the court upon the defendant's motion for judgment notwithstanding the verdict, based upon the grounds that there is a complete failure of proof to establish any negligence of the defendant and a complete failure of proof on the part of plaintiff to establish that he was in the exercise of due care and caution for his own safety immediately prior to and at the time of the accident in question.

The evidence summarized most favorably to plaintiff's position is the following: On and for a period of approximately 5 years prior to January 19, 1955, plaintiff resided at 318½ 45th Street, Rock Island, Illinois. On the morning of January 19th he reported for his work

at International Harvester Company in Moline, Illinois, and arrived home from work at about 6 p. m. He was also employed at that time at a Phillips 66 Station located on 19th Avenue and 16th Street in Moline and was due at work there on the 19th at 6:30 p. m. Upon arriving home about 6:00 plaintiff testified that he had a sandwich, changed clothes and started his car which was parked in an alley behind his residence. About 6:20 he scraped the snow and ice from the windows of the car and left for his work at the station. From his parking place in the alley he traveled south less than a block to Fifth Avenue, turned east on Fifth Avenue for approximately one-half block to 45th Street and turned to the right or south on 45th Street. The grade crossing at which the collision occurred is situated immediately south of the intersection of Fifth Avenue and 45th Street. Forty-fifth street runs north and south and a series of railroad tracks cross the street approximately at right angles in a space of some 200 feet south of the corner of Fifth Avenue and 45th Street. The crossing is protected by gates with flasher signals and a bell which are controlled automatically by an electric circuit. The northernmost track is the main line of the Burlington railroad. 60 to 70 feet south of the Burlington track is located defendant's switch track to the Enright Coal Company and between the latter two tracks the Enright Coal Company office is located on the east side of 45th Street. On the west side of 45th Street, beginning about 15 to 20 feet west of the west sidewalk, is a coal pile which was on the day in question approximately 200 feet in length and about as high as a coal car. A number of coal cars were parked on the Enright switch track immediately south of the coal pile extending westerly from a point about 15 to 20 feet west of the sidewalk on the west side of 45th Street. Defendant's eastbound main track, the track where the collision occurred and the southernmost track in the grade crossing complex, is located approximately 50 feet south of the Enright switch where plaintiff testi-

fied the coal cars had been parked. Plaintiff testified that he drove south across the grade crossing at 5 to 10 miles per hour in second gear, that he looked both ways and saw nothing except the coal pile and the parked freight cars, that he looked both ways again after passing the parked freight cars and that the last thing he remembers seeing was the parked freight cars. Defendant's train was traveling eastward on the eastbound main track at a speed of 15 to 20 miles per hour, with the headlight operating and lighted. Plaintiff testified when he entered the crossing the north gates were standing straight up and he didn't see any flashing lights or hear any bell and that he didn't see any gates come down or lights flash prior to the collision. Several witnesses for plaintiff testified that the crossing signals had not been working properly for approximately a week prior to January 19th. Plaintiff's residence was located approximately a block and one-half from the crossing. He testified that he was thoroughly familiar with the crossing and the location of the Enright office and coal pile. He estimated that he drove over that grade crossing 6 to 7 times per day.

■■ When the evidence and all inferences therefrom are considered most favorably to the plaintiff, I think the court must conclude as a matter of law that plaintiff was guilty of contributory negligence and that judgment should be entered notwithstanding the verdict on that ground. It is well settled in Illinois that the law will not tolerate the absurdity of allowing a person to testify that he looked and did not see a train when he could have seen it. See Monken v. Baltimore & Ohio R. Co., 342 Ill.App. 1, 95 N.E.2d 130, 132; Carrell v. New York Central R. Co., 317 Ill.App. 481, 47 N.E. 2d 130, 135, affirmed 384 Ill. 599, 52 N.E. 2d 201; Sheehan v. Chicago N. S. & M. R. Co., 269 Ill.App. 477, 483. In the latter case ordinary care it is said, requires an automobile driver, approaching a railroad crossing, to look and listen not only once but to avail himself of every opportunity to see and hear, and that

where a driver of an automobile at a crossing had an unobstructed view the court may disregard his testimony that he looked and did not see a train. I think the above principles govern the decision of this case.

The recent case of Groesch v. Gulf, Mobile & Ohio R. Co., 7 Cir., 241 F.2d 698, is closely analogous to the case at bar. There plaintiff's intestate traveling East on Jackson Street in Springfield, Illinois, was struck by a Southbound train traveling at a speed of about 15 miles per hour. The plaintiff's intestate was familiar with the crossing and the evidence showed that he was a frequent visitor to the home of a woman who lived a short distance from the scene of the accident. On the day of the accident plaintiff's intestate left the house of this woman, stopped before entering the street and turned east onto the street and drove the short distance to the railroad tracks. At the time of making this stop decedent's vision of the railroad tracks was obstructed by an apartment house except for an area of about 75 feet of the track North of the center of Jackson Street. The undisputed testimony revealed that after passing the apartment house and from a point about 30 feet westerly from the westernmost rail of defendant's track a motorist can see approximately 4 blocks to the North up the railroad right of way. The crossing where the collision occurred was protected by red flasher signals located on each side of the railroad tracks in the center of Jackson Street. Several witnesses testified that the flasher signals were not working at the time of the collision. At the close of plaintiff's evidence the trial court directed a verdict for defendant on the ground that the evidence showed as a matter of law that plaintiff's intestate had been guilty of contributory negligence. Judgment for defendant was affirmed, the court holding in reliance on Moudy v. New York, C. & St. L. R. Co., 385 Ill. 446, 53 N.E.2d 406, and Carrell v. New York Central R. Co., 384 Ill. 599, 52 N.E.2d 201, 205, that plaintiff's intestate had had an opportunity to see the approaching train and to avoid a collision and that his failure to do so was contributory negligence. In pertinent part the court said, 241 F.2d at page 701, as follows:

"He was familiar with the crossing. For a considerable distance before reaching [the southbound] track he could have seen the train approaching, if he had looked to the north. It was daylight and the record shows no physical aspects of the weather which would have interfered with his seeing the train, had he looked. The train was approaching at 15 miles per hour and not at a high rate of speed as in the Humbert case. There was no circumstance existing which justified his relying exclusively upon the automatic flash lights. There was nothing in the surroundings to excuse his using his eyesight, which was unimpaired."

In Moudy v. New York, C. & St. L. R. Co., 385 Ill. 446, 53 N.E.2d 406, it appeared that the plaintiff had an unobstructed view and should have seen the approaching train from at least 60 feet from the railroad track. The court reversed a judgment for the plaintiff holding that his failure to see the train or, in the alternative, his having seen the train and failed to stop, constituted contributory negligence. In pertinent part the court said, 53 N.E.2d at pages 408–409, as follows:

"The rule has long been settled in this State, and is generally recognized, that railroad crossings are dangerous places, and that one crossing the same must approach the track with the same amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a crossing it is generally condemned as negligence. The law requires the traveler, under such circumstances, to make diligent use of his senses and sight and hearing, to retain proper control of his vehicle, and to exercise care commensurate with the

danger to be anticipated. Provenzano v. Illinois Central R. Co., 357 Ill. 192, 191 N.E. 287; Greenwald v. Baltimore & Ohio R. Co., 332 Ill. 627, 164 N.E. 142; and Carrell v. New York, Central R. Co., 384 Ill. 599, 52 N.E.2d 201.

"When a railroad train and a person traveling on a highway each approach the crossing at the same time it is the duty of the traveler, in obedience to the known custom of the country, to stop, and not attempt to pass in front of the advancing train. Newell v. Cleveland, Cincinnati, Chicago & St. L. R. Co., 261 Ill. 505, 104 N.E. 223. One who has an unobstructed view of the approaching train is not justified in closing his eyes in crossing a railroad track in reliance upon the presumption that a bell would be rung or a whistle sounded, and offering the presumption as an excuse for exercising care. Schlauder v. Chicago & Southern Traction Co., 253 Ill. 154, 97 N.E. 233; Greenwald v. Baltimore & Ohio R. Co., 332 Ill. 627, 164 N.E. 142. Likewise it is clear that if the view of the crossing is obscured, and the location of the crossing is known to the traveler, it is his duty to approach the crossing with the amount of care commensurate with the situation as it exists. The claim that care and caution by any person has been exercised cannot be sustained, when the known facts disclose that ordinary care would have avoided the accident."

Again in Carrell v. New York Central R. Co., 384 Ill. 599, 52 N.E.2d 201, 204, 205, the court said in pertinent part:

"A duty devolves upon persons about to cross a railroad track to take proper precaution to avoid accident, to be on the alert for possible danger and not recklessly to go upon the track. Railroad crossings are generally recognized to be dangerous places, and must necessarily be approached with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution in proceeding over a railroad crossing the general knowledge and experience of mankind condemns such conduct as negligence. Provenzano v. Illinois Central R. Co., 357 Ill. 192, 191 N.E. 287; Greenwald v. Baltimore & Ohio R. Co., 332 Ill. 627, 164 N.E. 142. One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track upon the assumption that a bell will be rung or a whistle sounded. No one can assume there will not be a violation of the law or negligence of others and then offer such assumption as an exuse for failure to exercise care. The law considers obnoxious a contention to the effect that a person looked but did not see a train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. Greenwald v. Baltimore & Ohio R. Co., 332 Ill. 627, 164 N.E. 142. Schlauder v. Chicago & Southern Traction Co., 253 Ill. 154, 97 N.E. 233.

\* \* \* \* \* \*

"In the present case, the undisputed evidence shows that, notwithstanding an unobstructed view of the approaching train, Ruthe Carrell proceeded toward the railroad crossing and to her death. Under any of the alternatives suggested, namely, whether she looked and did not see the train, whether she failed to look, or, under plaintiff's theory, that she did look and did see the train, taking the evidence in its light most favorable to plaintiff and giving him the benefit of all favorable legitimate inferences arising therefrom, the evidence conclusively shows that Ruthe Carrell was not in the exercise of due care for her own safety at and just prior to the time of the accident, and, conversely, that she was

contributorily negligent as a matter of law. * * * "

See to the same effect Wheat v. Baltimore & Ohio R. Co., 7 Cir., 262 F.2d 289.

In this case considering the evidence and on inferences therefrom most favorably to plaintiff's case it appears that his view to the west was at least partially obstructed by the coal pile and by parked freight cars when he first entered the crossing. From a point which he himself estimated to be approximately 50 feet north of the point of impact, he had an unobstructed view to the West of the track upon which defendant's train was traveling. The train was traveling slowly at an estimated speed of 15 to 20 miles per hour. There is no evidence of inclement weather conditions which would have tended to obstruct vision. It was about 6:30 p. m., and dark, but the lights were burning on the front of defendant's engine.

▇ I think the circumstances are such, that, when the principle of the cited Illinois cases is applied thereto, that plaintiff may not be heard to say that he looked and did not see the train. If he looked to the right, to the West, at the point at which he says he did so, he must have seen the train coming at a time when he was approximately 50 feet North of the track traveling in second gear at a speed of 5 to 10 miles per hour. The court can only conclude that plaintiff did not look as he said he did, or that, having looked, he saw the train, gambled in a race to pass in front of the train and got caught with a losing hand. Nor was he justified in relying exclusively on the automatic crossing warning signals in view of his opportunity at this crossing to see and to hear the approaching train. See Groesch v. Gulf, Mobile & Ohio R. Co., supra; Schroeder v. Minneapolis, St. P. & S. S. M. R. Co., 7 Cir., 204 F.2d 758, 760; Moudy v. New York, C. & St. L. R. Co., supra.

The cases upon which plaintiff relies are distinguished from this case. Thus in Langston v. Chicago & N. W. Ry. Co., 330 Ill.App. 260, 70 N.E.2d 852, 858, the plaintiffs struck the side of a box car under night-time, foggy conditions when unlighted objects could be seen by automobile headlight from a distance of only about 10 feet. The driver of the automobile was thoroughly familiar with the crossing. The crossing was equipped with two electrically operated sets of flashing signals which were synchronized with a stop light at a near-by highway intersection in such a fashion that when the crossing lights were operating the intersection stop light showed a constant red light. Plaintiffs testified that the intersection stop light had been green at the time they passed through it and that they first saw the side of the box car when they were some 10 feet short of a collision. The car collided with the 59th of 83 cars and a caboose behind the engine, and the only lights showing on the whole train were the engine and caboose lights.

The opinion of the court in Niemi v. Sprague, 288 Ill.App. 372, 8 N.E.2d 707, does not disclose conditions bearing upon the ability of plaintiff's intestate to see the train as it approached at a speed of some 55 miles per hour, except inferentially in the court's statement that the collision occurred at an intersection of the railroad track with a busy street in the heart of Waukegan, Illinois. In Humbert v. Lowden, 385 Ill. 437, 53 N.E. 2d 418, it appeared that crossing gates and lights at the railroad intersection were manually controlled by a watchman who had failed to close the gates and that the view of the driver in the direction from which the train came was obstructed by a building located only 33 feet from the center of the track on which the collision occurred and by an adjoining area which was built up solidly with buildings. Under those circumstances, the driver entered upon the crossing and was struck by a train traveling at a speed in excess of 70 miles per hour. Finally in Bunton v. Illinois Central R. Co., 15 Ill.App.2d 311, 146 N.E.2d 205, it appeared that the view of the direction from which the train came was obstructed by buildings and parked freight cars until the plain-

tiff reached a point approximately 14 feet from the point of impact. It further appears that the plaintiff stopped his car before entering the crossing, saw or heard nothing, then entered upon the crossing and was struck by a train which the train crew estimated to have been traveling at a speed in excess of 80 miles per hour.

Here there are no conditions comparable to those in the last cited cases, or an excessive speed situation such as that characterizing the three cases last cited.

I hold as a matter of law that plaintiff was guilty of contributory negligence and that the verdict in his favor is contrary to the law of Illinois. The defendant's motion for judgment notwithstanding the verdict is hereby allowed and judgment is ordered in its favor against plaintiff.