Mervin Tucker, a minor, by his father and next friend, Lee Tucker, Plaintiff-Appellee, v. New York, Chicago and St. Louis Railroad Company, Defendant-Appellant.

Gen. No. 10,083.

Third District.
January 28, 1957.
Rehearing denied March 4, 1957.
Released for publication March 4, 1957.

Baker and Baker, of Shelbyville, Pope and Drie-meyer, of East St. Louis, for appellant; John J. Baker, of Shelbyville, and Frank M. Rain, of East St. Louis, of counsel.

William L. Turner, of Shelbyville, and Earl S. Hodges, of Springfield, for appellee.

JUDGE CARROLL delivered the opinion of the court.

This is an action to recover damages for personal injuries sustained by plaintiff when the truck which he was driving was struck by defendant's freight train at a grade crossing. A verdict for $12,250 for plaintiff was returned by the jury. The court denied defendant's motion for judgment notwithstanding the verdict and in the alternative for a new trial and entered judgment on the verdict.

On this appeal defendant seeks reversal on the theory that plaintiff as a matter of law was guilty of contributory negligence and that the trial court should have directed a verdict for defendant, or that in the alternative its motion for a new trial should have been allowed. No question is raised on the pleadings or as to the amount of the verdict.

The negligence charges against the defendant as made in the complaint are operation of the train at a speed greater than was reasonable and proper; failure to keep a proper lookout for truck at the crossing; failure to give statutory signals; operation of the train without adequate brakes; failure to keep its right-of-way free of obstruction to view and permitting thereon large piles of dirt, growth, brush, poles and a building, and failure to maintain the crossing as required by the rules of the Illinois Commerce Commission.

546

The crossing at which the accident occurred is in the open country about three miles east of Cowden in Shelby County, Illinois and there are no trees or buildings in its immediate vicinity. The defendant's single track runs in a northeasterly and southwesterly direction and the highway as it approaches the crossing runs generally in an easterly and westerly direction. About eight o'clock A.M. on the morning of September 4, 1953, plaintiff was driving a milk truck and came up to the crossing from the east. Defendant's train consisted of 48 freight cars, caboose and steam locomotive which was approaching the crossing from the northeast.

Plaintiff's version of the occurrence as it appears from his testimony is in substance that before the collision he had picked up a can of cream at Earl Endsley's farm; that although the weather was cloudy with a little mist of rain and fog, the visibility was about two miles; that he was familiar with the crossing, having driven over it daily on his milk route for about nine months; that after leaving the Endsley farm yard he drove west and turned north on the highway; that after a short distance the highway turns west before crossing the railroad track; that as he turned west he saw the track and right-of-way in front of him; that he looked off to his right and saw telephone pole lines and timber; that the timber was a quarter of a mile northeast of the crossing; that he was driving 20 to 25 miles per hour; that as he approached the crossing he slowed down and stopped the truck about 9 or 10 feet east of the tracks; that he then "scooted" across the front seat, rolled down the right window of the cab of the truck and looked to the right; that he saw telephone lines, the railroad tracks, the top of a little shack and sprouts and weeds; that he did not see any train nor did he hear any train warning; that he slid back across the seat and put the truck in low gear and started to cross the track at about 4 or 5 miles

547

per hour; that after the front end of the truck had crossed the track the rear end was struck by the train, resulting in the injuries for which he seeks recovery.

On cross examination plaintiff testified that there was a telephone booth shack about 275 feet from the crossing; that when he was looking to the right from the truck which was 9 or 10 feet from the rail nearest to him he could see about 200 feet beyond the telephone shack; that he didn't see anything other than the rails, shack, telephone wires and the sprouts and weeds.

The only eye witness to testify to the actual occurrence was Earl Endsley, a farmer living approximately 40 rods straight east from the crossing. He testified that he watched plaintiff as he left his place after picking up some cream; that the witness could see the railroad track from his home; that he saw a train coming from the northeast; that he heard the train; that it was a freight train and was making the noise usually made by a freight train; that he observed it continuously until it struck plaintiff's truck; that it was 45 to 50 rods northeast of the crossing when he first observed it; that in his opinion the train was running at 60 to 65 miles per hour; that he listened for a bell or whistle but did not hear any; and did not see any light on the engine; that there was nothing to obstruct the view of a person driving west toward the railroad track; that he estimated the speed of plaintiff's truck at 15 to 20 miles per hour, which speed continued until the time of its collision with the train; that he watched the truck until it was struck and that just before the collision he saw the brake light of the truck go on.

A number of photographs of the crossing which were taken a few days after the accident were introduced in evidence. Five of these pictures were taken from the center of the road five feet above the ground with the camera facing northeast at varying distances of 10, 17,

100, 150 and 200 feet southeast of the south rail of the track. The pictures taken from 10 and 17 feet southeast of the south rail show an unobstructed view of the rails of defendant's track to the northeast as far as the timber, which plaintiff located as being one quarter of a mile northeast of the crossing. The pictures taken 100, 150 and 200 feet southeast of the track likewise show no obstructions to the view northeast as far as the timber. Other than the track, the only object shown on these pictures are the telephone poles and shack to which plaintiff referred, some fence posts along the right-of-way and a thin growth of vegetation which does not appear to be more than a few inches above the ground.

A plat of the area of the crossing and a profile map showing the elevation thereof were introduced in evidence by plaintiff. This evidence would not appear to disclose anything concerning the physical situation at the crossing which varies from that shown by the photographs. However, from the plat and testimony of the engineer who prepared the same, it appears that the point where plaintiff turned west on the highway is about 400 feet east of the crossing.

The head brakeman, fireman and engineer on the train testified that the locomotive bell was ringing and the regular crossing whistle sounded as the train approached the crossing. Witnesses for defendant also testified that the headlight on the engine was burning and its oscillating headlight was flashing and that the speed of the train was about 50 miles per hour.

On this appeal the principal question raised is whether plaintiff was in the exercise of due care at the time of the accident. The answer to that question determines whether the trial court erred in refusing to direct a verdict for the defendant.

██ In passing upon a motion to direct a verdict for the defendant in actions such as this, the rule by

which the trial court is guided is well established, and has been announced by our courts in numerous cases. Such motions should be allowed if when all the evidence is considered in its aspects most favorable to the plaintiff together with all reasonable inferences to be drawn therefrom, there is a total failure of proof on one or more essential elements of the case. Carrell v. New York Central Railroad Co., 384 Ill. 599; Greenwald v. Baltimore and Ohio Railroad Co., 332 Ill. 627; Illinois Central Railroad Co. v. Oswald, 338 Ill. 270.

It follows therefore that if there is no evidence in the record fairly tending to prove the exercise of due care by plaintiff or raising a reasonable inference that such care was exercised, then the issue of due care should not have been submitted to the jury.

■ As the plaintiff approached defendant's track, it was his duty to exercise reasonable care for his own safety. According to the well established rule in this state, such duty required him to both look and listen before crossing the track to see if there was danger. This is a reasonable requirement because it is generally recognized that railroad crossings are dangerous places and a person going upon the same must do so with a degree of care commensurate with the danger involved. Moudy v. New York, Chicago and St. Louis Ry. Co., 385 Ill. 446; Provenzano v. Illinois Central Railroad Co., 357 Ill. 192; Greenwald v. Baltimore and Ohio Railroad Co., supra. The above rule is tersely stated in the Moudy case, supra, as follows:

"The rule has long been settled in this State, and is generally recognized, that railroad crossings are dangerous places, and that one crossing the same must approach the track with the same amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a crossing it is generally condemned as negligence. The law requires the traveler, under

such circumstances, to make diligent use of his senses of sight and hearing, to retain proper control of his vehicle, and to exercise care commensurate with the danger to be anticipated." (Citing cases.)

Whether the evidence shows plaintiff's compliance with such duty depends not only upon what he did just prior to and at the time of the accident but also the circumstances under which he acted. Plaintiff was approaching a crossing which he had driven over daily for about nine months. His sight and hearing does not appear to have been impaired. He testified that although he injured his right eye when he was a child, the sight in his left eye was perfect. Although there was a little mist and fog in the area, he stated the visibility was two miles. As he turned the corner to go west towards the crossing, he saw the defendant's track in front of him. At that point he looked off to his right and saw telephone lines and timber which was a quarter of a mile northeast of the crossing. He failed to state, however, whether he then looked for a train approaching from the right. His view of the train was unobstructed from the time he turned the corner to go west until he reached the crossing. While he was traversing the distance from the turn to the crossing, Endsley, who was considerably further from the track than was plaintiff, saw the approaching train. It thus appears that although his vision was unobstructed, plaintiff's first effort at discovering whether a train was approaching or not was made when he stopped his truck 9 or 10 feet from the nearest rail. With the truck stopped he listened and looked down the track but did not hear or see the train which a few seconds later struck the truck. No mention is made in his testimony of anything which interfered with his view of the train. Without qualifying the statement in any respect he said that as he looked he could see the rails and other objects on the east side of the track. How-

ever, his failure to observe defendant's train on the track is unexplained.

Consideration of the foregoing facts and circumstances with due regard for the rule requiring that upon a motion to direct a verdict for defendant the evidence must be taken most strongly in favor of the plaintiff appears to lead only to the conclusion that plaintiff failed to prove that he was in the exercise of due care just prior to and at the time of the accident.

█ Plaintiff argues that there is evidence of obstructions to his view of the train, pointing out that after he turned west, the train was approaching from his rear and the opposite side of the driver's seat of the truck; that the train came into view after he turned west; that there were weeds and sprouts and telephone poles along the right-of-way and that it was foggy. This argument is not sustained by the record. There is no basis for the assumption that by reason of these circumstances, plaintiff's view was obstructed in the absence of proof to that effect. After plaintiff turned west according to his own testimony and that of Endsley, the former had an unobstructed view of the approaching train for a distance of at least a quarter of a mile. Furthermore, the evidence furnishes no reasonable explanation for plaintiff's failure to look for a train as he drove west and before he reached a point 10 feet from the crossing. We think reasonable prudence would require a person knowingly approaching a railroad crossing to commence the diligent employment of his senses of sight and hearing to learn whether a train is approaching before reaching a point 10 feet from the track. If, in this case the evidence disclosed that plaintiff was prevented from seeing the train by reason of obstruction to his view to the right, then his failure to look for a train would be excused. However, the evidence not only fails to show any obstruction to plaintiff's view but it would also appear to clearly

indicate that the existence of any such obstruction was not given by him as the reason for his failure to see the train in time to have avoided the accident. He merely testified that he did not see the train.

Cited in support of the contention that the question of plaintiff's due care was properly submitted to the jury are Bales v. Pennsylvania R. Co., 347 Ill. App. 466; Monroe v. Illinois Terminal R. Co., 346 Ill. App. 307; Karlock v. New York Cent. R. Co., 333 Ill. App. 655. An examination of these cases discloses the determining factor in each instance to have been the question as to whether or not the proof showed plaintiff's view of the train was unobstructed.

In the Bales case, supra, the court dealt with a situation where there was evidence that plaintiff's view of the track was obstructed until he was 15 or 20 feet from it. The plaintiff applied the brakes on his car as soon as possible after he saw the train and came to a stop about 1 foot from the track, but his car was struck by the overhang from defendant's train. It was contended by the defendant that plaintiff was guilty of contributory negligence as a matter of law and in support thereof cited numerous cases. In rejecting defendant's contention the court had this to say:

"In each case there was a variation in the facts but the point upon which the decision was finally determined was whether or not plaintiff's view of the train prior to the collision was unobstructed. If it was unobstructed, defendant was entitled to a directed verdict. If it was not, it was a question of fact for the jury to decide. It is a well known rule of law that a traveler must make use of his sense of sight and hearing and exercise care commensurate with the danger to be anticipated in approaching a crossing, Carrell v. New York Cent. R. Co., supra, but it is not a rule of law that the omission of a duty to look and listen will

bar recovery where there are facts excusing the performance of the duty."

Likewise in the Karlock case it appears that the driver of the automobile could not see the approaching train until he was less than 15 feet from the tracks and even at that distance there was a car obstructing his view. The court held that since there was proof of facts excusing failure of the driver to look and listen the issue of due care was properly submitted to the jury.

The feature distinguishing the above cases from that presented on this appeal is the absence in the latter of proof that plaintiff's view of the approaching train was obstructed. If there was an excuse for his failure to see or hear the train it is not demonstrated by the evidence in the record.

The facts and circumstances shown by the instant record makes it obvious that the cases cited by plaintiff do not support his contention. The burden of proving due care rested upon plaintiff and if he failed with respect to that element of his case then the trial court should have directed a verdict for the defendant. We think upon consideration of the evidence all reasonable minds would agree that it does not fairly tend to prove that plaintiff was in the exercise of due care at the time of the accident.

For the above reasons we are of the opinion that the trial court should have allowed defendant's motion for a directed verdict and the judgment is therefore reversed.

Reversed.