Betty Jane **GROESCH**, Executrix of the Estate of Thomas Elmer McNelly, deceased, Plaintiff-Appellant,

v.

**GULF, MOBILE AND OHIO RAILROAD COMPANY**, a corporation, Defendant-Appellee.

No. 11838.

United States Court of Appeals Seventh Circuit.

March 1, 1957.

G. William Horsley, Robert F. Vespa, Springfield, Ill., for plaintiff-appellant.

Louis F. Gillespie, George B. Gillespie, Gillespie, Burke & Gillespie, Springfield, Ill., for defendant-appellee.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Thomas Elmer McNelly about 3 P. M. on Christmas Day, 1954, drove his car easterly along Jackson Street in Springfield, Illinois, where that street intersects two railroad tracks of defendant. A southbound train traveling about 15 miles per hour struck the car and, as a result of the collision, McNelly died. An action for damages brought against defendant by McNelly's executrix ended in a directed verdict in favor of defendant at the close of plaintiff's evidence, upon which judgment was entered. Plaintiff has appealed.

The arguments in this court are confined to the question of whether plaintiff's evidence shows as a matter of law that decedent was guilty of negligence contributing to the fatal accident. We now detail the facts appearing in that evidence, in addition to those above related.

A northbound and a southbound track of defendant are located in Third Street. That part of the street on the west side of the tracks and north of Jackson Street is paved. There is an additional 4 or 5 feet between the east edge of that roadway and the southbound track. The part of Third Street west of the tracks is not paved south of Jackson Street. On the northwest corner of Third and Jackson Streets is a two-story building, the southeast corner of which is about 28 feet from the nearest rail of the southbound track. Between a rounded curb and a sidewalk

on Jackson Street at the southwest corner of the street intersection are located a telephone pole and a fire hydrant. The sidewalk is along an automobile parking lot on the southeast corner. The curb extends westerly about 25 feet to a driveway about 38 feet wide leading from the parking lot to Jackson Street.

Near the southwest corner of the parking lot is a one story house, where on the day in question Ethel Roy (now Burgess) lived. Deceased had been a frequent visitor at her home.

There are electric signal lights at the railroad crossing which flash at the approach of a train or when one is on the crossing. These consist of a set of flashers in the center of the street on either side of the tracks.

Ethel testified that decedent was in apparent good health, was not hard of hearing nor did he have any impairment of his eyesight; that about 3 P.M. on the day in question decedent left her home in his car and approached Jackson Street; that, when he reached that street at the driveway,[1] he stopped and looked both east and west and then turned his car to the right and proceeded slowly onto the tracks. When he made the stop just referred to Ethel could see the train, which she estimated was 100 feet from the crossing. She was then 100 feet south of decedent. When he stopped upon reaching Jackson Street his vision was obstructed by the apartment building except for perhaps 75 feet of the track to the north of the center of Jackson Street. As he turned his car to the right, the flasher lights, according to Ethel, were not operating and did not operate thereafter during the time the train was crossing Jackson Street.

Other witnesses observed that the lights were not flashing immediately after the impact of the train against the car. Several witnesses testified that they heard no bell or whistle from the train before the accident occurred.

Elsie Logan testified that she was standing on the curb near the telephone pole and fire hydrant and that, from that point, she could see to the railroad station more than 4 blocks north. Her sister, Marjorie Logan, testified that, although her sight is not as good as Elsie's, she could see practically to the station, that she was looking between "that apartment building and the trains". The brother of these sisters, Howard Logan, a retired civil engineer, testified that he had lived within a block of the crossing all of his life and had made many observations from the southwest corner of Jackson Street and the tracks, looking to the north, that he could see to the station when standing on the curbline, and that when sitting in a car at that point one could see nearly as far as the station, unless it was "foggy, or something of that kind in the way". He also said that if one did come out of the parking lot and onto Jackson Street, he could see beyond the railroad viaduct over Capitol Avenue, one block north of Jackson Street crossing, and that when one driving reaches a point 30 feet from the west tracks and looks toward the north he can see approximately to the station.

When decedent turned east and drove toward the tracks, he was not moving more than 5 or 10 miles per hour and the approaching train was traveling at 15 miles per hour. He did not slacken his speed prior to the collision.

Plaintiff put in evidence a police report reciting that the engineer stated that the driver of the automobile did not look up until he was on the track in front of the train.

Plaintiff contends that, where there is an obstruction to the view of one approaching a railroad crossing, the question of contributory negligence is one for the jury and not for the court, and

1. Plaintiff's counsel in his brief states that, according to a plat in evidence, the nearest decedent could have then been to the track was in the neighborhood of 60 feet.

also that, where a railroad has erected and maintained signal lights to warn of approaching trains and the same are not flashing, it amounts to an invitation to travelers on the highway and an assurance to them that they may cross over the tracks in safety, and presents a jury question.

On the other hand, defendant contends, *inter alia,* (1) that plaintiff had the burden of proving that the deceased was in the exercise of due care and caution for his own safety immediately prior to and at the time of the accident; and (2) that motorists may not rely upon the presumption that automatic flashers are working and offer the presumption as an excuse for not looking to see whether a train is approaching a crossing, where such motorist has a clear and unobstructed view, "as plaintiff did in this case".

In applying the Illinois law, which it is agreed is applicable in this case, the district judge believed that plaintiff's evidence showed that decedent was guilty of contributory negligence in driving upon the tracks and, accordingly, he directed a verdict in favor of defendant.

Various Illinois decisions are cited by counsel. It is unnecessary to mention all of them. Plaintiff relies heavily upon Humbert v. Lowden, 385 Ill. 437, 53 N.E.2d 418. We think it is distinguishable from the case at bar. In that case the train was running at a speed of 70 miles per hour when it passed a street crossing in a city and struck an automobile at three o'clock in the morning. There was a marked conflict of testimony as to the distance in which one could see the train after clearing an obstruction near the crossing. The court held that it was undisputed that the view of the train was completely obstructed because of buildings until the plaintiff reached a point where he could look through a narrow alley next to a police station, and it was not at all clear how far down the tracks the plaintiff could have seen, if at all, after his view became unobstructed. The evidence further showed that the plaintiff was following another car which crossed the track in front of him which may possibly have excused the plaintiff from failing to see the train.

Defendant relies upon Moudy v. New York C. & St. L. R. Co., 385 Ill. 446, 53 N.E.2d 406, in which the court decided that the evidence in that case most favorable to the plaintiff failed to show that he was in the exercise of due care, and that, therefore, as a matter of law, he was not entitled to recover for injuries sustained in a collision between his car and a train of the defendant. At page 452 of 385 Ill., at page 408 of 53 N.E.2d, the court said:

"The rule has long been settled in this State, and is generally recognized, that railroad crossings are dangerous places, and that one crossing the same must approach the track with the same amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a crossing it is generally condemned as negligence. The law requires the traveler, under such circumstances, to make diligent use of his senses of sight and hearing, to retain proper control of his vehicle, and to exercise care commensurate with the danger to be anticipated. * * *"

In Carrell v. New York C. R. Co., 384 Ill. 599, at page 604, 52 N.E.2d 201, at page 204, the court said:

"A duty devolves upon persons about to cross a railroad track to take proper precaution to avoid accident, to be on the alert for possible danger and not recklessly to go upon the track. * * * One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track upon the assumption that a bell will be rung or a whistle sounded. No one can assume there will not be a violation of the law or negligence

of others and then offer such assumption as an excuse for failure to exercise care. The law considers obnoxious a contention to the effect that a person looked but did not see a train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. * * *"

In the Humbert case, 385 Ill. at page 443, 53 N.E.2d at page 420, the court dismissed the failure of the railroad to lower its crossing gates at the intersection in question upon the approach of the train which struck the car of plaintiff's decedent. The court said:

"Here, for the protection of the public, appellees had erected and maintained crossing gates. If the gates were not lowered this amounted to an invitation to travelers on the highway. It was an assurance, to them, that they could cross over the railroad tracks in safety. In Chicago & Alton Railroad Co. v. Pearson, 184 Ill. 386, 56 N.E. 633, 635, it was said: 'It is not a rule of law that the omission of the duty to look and listen will bar a recovery where there are facts excusing the performance of that duty.' * * * that it is the settled rule of this court that it cannot be said, as a matter of law, that a person is in fault in failing to look and listen, if misled *without his fault,* * * *."* (Italics supplied.)

Applying this settled rule to the facts in the case at bar, we cannot say that decedent was misled without his fault and thereby was excused from looking to ascertain whether a train was coming before he attempted to pass over the southbound track. He was familiar with the crossing. For a considerable distance before reaching that track he could have seen the train approaching, if he had looked to the north. It was daylight and the record shows no physical aspects of the weather which would have interfered with his seeing the train, had he looked. The train was approaching at 15 miles per hour and not at a high rate of speed as in the Humbert case. There was no circumstance existing which justified his relying exclusively upon the automatic flash lights. There was nothing in the surroundings to excuse his using his eyesight, which was unimpaired.

For these reasons, the judgment of the district court is affirmed.

Judgment affirmed.