**Harold G. DAVIS, Plaintiff-Appellant,**

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a corporation, Defendant-Appellee.**

**No. 12729.**

United States Court of Appeals Seventh Circuit.

Jan. 6, 1960.

Frederick W. Allen, Peoria, Ill., Samuel Wener, Chicago, Ill., for appellant.

Eugene R. Johnson, Peoria, Ill., O. L. Houts, Eaton Adams, Chicago, Ill., Jordan A. Fifield, Miller, Westervelt & Johnson, Peoria, Ill., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This diversity action was brought by Harold G. Davis, plaintiff-appellant, against the Chicago, Rock Island and Pacific Railroad Company, defendant-appellee. Recovery was sought for personal injuries and property damage sustained by plaintiff in a collision between an automobile driven by him and a switch engine operated by defendant. The complaint asserted plaintiff's freedom from contributory negligence and charged that the collision and resulting injuries and damage were caused by defendant's negligence in the maintenance and operation of the railroad crossing gates, flasher lights and warning bells.

The jury returned a verdict for plaintiff for $7,500. The district court granted defendant's motion for judgment not-

withstanding the verdict, specifically finding that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff appealed.

There was evidence to sustain a conclusion by the jury that the crossing gates, flasher lights and warning bells were not functioning and through negligence of the defendant the plaintiff received no warning of the approaching switch engine as he entered the crossing. Plaintiff's appeal presents the single issue as to whether as a matter of law he was guilty of contributory negligence.

The evidence bearing on the issue of contributory negligence when viewed in the light most favorable to plaintiff establishes that the crossing involved, an intersection of three main lines and two switch tracks with a city street in Rock Island, Illinois, is 115 feet in length (from gate to gate). The northernmost track, the one first reached by plaintiff as he drove south, is a main line track of another railroad. There is a space of 60 to 70 feet before the next track, which is defendant's switch track for a coal company. In this space between the tracks, to the left, or east as one drives south, is located a building housing the coal company's office, atop of which is a flashing electric sign; on the right, or west, is a coal pile extending to the west parallel to the switch track, from a point at least 15 feet from a sidewalk which transverses along the right side of the crossing. The coal pile was 200 feet long and about as high as a coal car on the night in question and a number of railroad coal cars were standing on the switching track, parallel to the coal pile, the nearest car being about fifteen feet from the crossing. Plaintiff testified that the coal pile and standing cars obstructed his view of the tracks to the west.

Immediately south of defendant's switch track for the coal yard are three more tracks used and maintained by defendant. The first is another switch track; the second defendant's westbound main; and the third, the defendant's eastbound main where the collision between plaintiff's automobile and defendant's engine occurred. Plaintiff was familiar with the crossing and utilized it six to seven times a day. The collision occurred shortly after 6:20 p. m. on the evening of January 19, 1955; it was dark; the pavement was slick, there having been a heavy snow earlier in the week. Plaintiff estimated the distance from the coal yard switch track to the eastbound main as being "50 feet more or less". Defendant's Exhibit 7, a plat of the crossing, shows the distance from the center of the switch track to the center of the eastbound main to be 35 feet.

At the time of the collision defendant's switch engine was proceeding from west to east, pulling no cars, at a speed of between 15 to 20 miles per hour as it approached the crossing. Its headlight was operating and lighted. Plaintiff testified that he shifted his car into low gear when he came to the crossing, looked to the left and right, saw no trains, then started across at a speed from 5 to 10 miles per hour. As he drove upon the crossing he observed the flashing electric sign above the coal company office on his left, and saw the coal pile and standing railroad cars on his right. He stated that the latter had the effect of blocking his vision to the right. As he passed these obstructions he then looked in both directions and it was his testimony that the last thing he remembered seeing, prior to regaining consciousness in the hospital, were the standing coal cars on the coal company's switch track. Plaintiff placed the letter "R" on Defendant's Exhibit 7 to indicate the point at which he had last looked to his right after passing the coal pile and standing cars which were obstructing his vision.

From the testimony and exhibits it is clear that from the point marked on Defendant's Exhibit 7 as indicating the point plaintiff last looked to his right after passing the coal pile and standing coal cars, which had obstructed vision to the right, plaintiff had a clear and unobstructed view of the eastbound main track upon which defendant's switch en-

gine was approaching. But plaintiff could remember seeing nothing from that point on. When he passed the coal pile and standing cars he was at least 35 feet from the eastbound main track, traveling at from 5 to 10 miles per hour in low gear. He remembered seeing nothing further after seeing the standing railroad cars on the switch track at his right.

We agree with the trial judge in his apt observation that the law does not tolerate the absurdity of allowing a person to testify that he looked and did not see a train when he could have seen it. We are of the opinion that the district court in its conclusion that the plaintiff was guilty of contributory negligence as a matter of law correctly applied the teachings of Groesch v. Gulf, Mobile & Ohio Railroad Company, 7 Cir., 241 F.2d 698 and Moudy v. New York, Chicago & St. Louis R. Co., 385 Ill. 446, 53 N.E.2d 406 and cases therein cited. The observations made in Carrell v. New York Central R. Co., 384 Ill. 599, 52 N.E.2d 201, 204 are pertinent:

> "The law considers obnoxious a contention to the effect that a person looked but did not see a train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. Greenwald v. Baltimore & Ohio Railroad Co., 332 Ill. 627, 164 N.E. 142; Schlauder v. Chicago & Southern Traction Co., 253 Ill. 154, 97 N.E. 233.

> \* \* \* \* \* \*

> "In the present case, the undisputed evidence shows that, notwithstanding an unobstructed view of the approaching train, Ruthe Carrell proceeded toward the railroad crossing and to her death. Under any of the alternatives suggested, namely, whether she looked and did not see the train, whether she failed to look, or, under plaintiff's theory, that she did look and did see the train, taking the evidence in its light most favorable to plaintiff and giving him the benefit of all favorable legitimate inferences arising therefrom, the evidence conclusively shows that Ruthe Carrell was not in the exercise of due care for her own safety at and just prior to the time of the accident, and, conversely, that she was contributorily negligent as a matter of law."

The judgment of the district court is affirmed.

Affirmed.