Bobbie PETERS, Appellant,

and

Craig Alan Peters, Plaintiff,

v.

Lawrence HOWSER, Appellee.

No. 86–1435.

Supreme Court of Iowa.

Feb. 17, 1988.

Lyle A. Rodenburg, Council Bluffs, for appellant.

Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

Bobbie Peters brought this suit to recover damages after she was injured in a collision between a car in which she was a passenger and one driven by the defendant, Lawrence Howser. Although judgment was entered for Peters, she now appeals and raises several issues, two of which we find dispositive.

First, she contends the district court erroneously allowed the jury to consider whether she was contributorily negligent. Second, she maintains the district court should not have given Howser credit, toward damages, for advance payments. The jury's finding of thirty percent contributory negligence and the court's calculation of credit resulted in a reduction of the verdict.

While we find that the court acted properly regarding Howser's credit, we hold as a matter of law that Peters was not contributorily negligent. Accordingly, we modify the judgment to reflect the amount of damages Peters should properly receive and affirm.

On the day of the accident, in February 1983, snow was falling and blowing. Peters and her husband, who was driving, were traveling east on a two-lane highway. Despite the blowing snow, Mr. and Mrs. Peters testified that visibility was only intermittently obstructed and that the road surface was not completely snow-covered.

Howser was traveling west on the same highway toward the couple. He testified that before the accident he had not yet encountered any heavy accumulation of snow on the road. Howser added, however, that visibility was almost totally impaired by blowing snow.

According to Howser, he crossed into the eastward lane immediately before the accident to avoid a snowdrift. Peters said that she saw Howser's headlights approaching in their lane and that her husband then pulled their car as far to the right as possible. Howser collided with their vehicle nonetheless.

After settlement of her husband's claims, Bobbie Peters' suit was tried. At the close of evidence the court instructed the jury that, among other things, they could find Peters contributorily negligent as a passenger because of her failure to keep a proper lookout and warn the driver. The jury's verdict was for Peters, fixing damages at $54,000 but allocating thirty percent of the fault to her.

Howser's motion for judgment on the verdict requested that the court give him credit against the damages for payments made to Peters before trial by the parties' mutual insurer, the United Fire and Casualty Company (UFC). In its judgment, the court gave

Howser credit for $2831.78 of the total advance payment of $6904.06.

In this appeal, Peters claims, first, that the issue of her contributory negligence should not have been submitted to the jury because insufficient evidence exists to support a finding of fault on her part. Because she saw Howser's car at the same time as her husband, she contends she was keeping a proper lookout and did not need to warn him. Howser contends, on the other hand, that a factual determination by a jury on this issue was necessary because of the parties' conflicting testimony regarding weather and road conditions at the time of the accident.

Peters also argues that the district court should not have given Howser any credit for advance payments because their mutual insurer, UFC, made payments under the couple's policy rather than Howser's. Howser, however, claims that checks issued under his policy, which are reproduced in the record, show that the district court properly calculated the amount of credit.

We review these issues only to correct errors of law. Iowa R.App.P. 4.

### I. *Contributory Negligence.*

 Peters moved to withdraw the issue of her contributory negligence from consideration by the jury on the ground that no evidence supported its submission. The district court overruled the motion and submitted a contributory negligence instruction with two specifications: (1) failure to keep a proper lookout and (2) failure to warn the driver. In addition, the court submitted the following passenger instruction:

> As a passenger in the car the plaintiff Bobbie Peters was required to exercise reasonable care and prudence for her own safety; such care and prudence as an ordinarily prudent and cautious person would exercise under the same or similar circumstances. Although she was entitled to rely on the skill and judgment of the driver within reasonable limits, she was not entitled to completely surrender her care to the driver. If the

exercise of reasonable care and prudence under the circumstances required her to take any particular precaution to avoid injury, then she was under the legal duty to take such precaution and failure on her part to do so would constitute negligence.

Peters is, in effect, asking us to hold as a matter of law that she was not contributorily negligent. It is only in the plainest cases, in which reasonable minds could come to no other conclusion, that we decide a question of contributory negligence as a matter of law. *See* Iowa R.App.P. 14(f)(10). We think this is such a case.

In *Glandon v. Fiala,* we said that

> [a] passenger in an automobile is not under an absolute duty to see an impending danger in time to interfere and prevent it. Within reasonable limits [a passenger has] a right to rely on the skill and judgment of the driver. [A passenger is] not required to exercise the same degree of vigilance in looking and listening required of the driver.

261 Iowa 750, 755, 156 N.W.2d 327, 331 (1968); *accord Ehlinger v. State,* 237 N.W. 2d 784, 790 (Iowa 1976). In addition, we have recognized that a passenger may be negligent if the passenger "unreasonably fails to warn the driver of a danger which he discovers, or to make use of any ability [which he may possess] to control the negligence." *Wiedenfeld v. Chicago & N.W. Transp. Co.,* 252 N.W.2d 691, 698 (Iowa 1977) (quoting *Prosser on Torts* § 74, at 489 (1971)).

The record evidence on this issue comes from the testimony of the parties themselves. Craig Peters testified:

> As we went along we finally came to a spot where it looked like the snow was blowing pretty—quite a bit. And I approached this place, and I slowed down to about 20 miles an hour.... And I pulled over to the side of the road. In fact, I noticed that the white line was there, so I just pulled over so my right wheel was over the white line, and proceeded on.... And all of a sudden, quite a distance ahead of me, I saw the headlights barreling down. At that time

... I thought, well, we got some time, I had enough time, I pulled over as far as I could right up next to the snow.... [A]s I pulled over these headlights just kept coming and coming and coming, and there wasn't anything I could do; and finally there was a crash....

....

Q. All right. What happens now at the collision? Where does your car end up? A. We ended up against the snow [on the right side of the road]. [When] the collision happened, he must have glanced off, and he was just in the other lane of traffic after the accident.

Bobbie Peters testified:

Q. Now, tell the jury what happened and what you observed.... A. ... As we were driving Craig was, by my estimate ... going about 30.... [I] was sitting in the passenger side ... when I saw two headlights coming toward us in front of the car.

Q. [In w]hat lane of traffic were those headlights? A. The headlights were directly in front of us, and I know we were in our lane of traffic, because you could see the center line.

Q. And what did the car do at that time? A. Craig ... pulled as far as he could to the right against the snow.... [T]he car coming toward us then hit.... The lights never swerved to one side. They just kept coming, but they hit on the left—the driver's side, and went on past us. We seemed to just stop immediately just dead.

Howser testified:

Q. ... About how far before the collision did you [apply the brakes]? A. As soon as I saw [Peters'] car: 50, 60 feet.

Q. Did ... your vehicle continue in a straight line then? A. Yes.

....

Q. We asked you [in a deposition]: Do you recall whether or not you know of anything that the Peters' car had done that was negligent, and you told us you didn't A. No.

Q. So you are not making any claim that they did anything wrong? A. No.

....

Q. So as far as your recollection is concerned, you continued straight in whatever lane you might have been in up to the point of impact? A. Yes.

....

Q. What kind of impact was there between the two cars? A. Almost a head-on.

This testimony establishes as a matter of law that Craig Peters was doing everything a reasonable and prudent person would have done under the same or similar circumstances. In short, he was not negligent. Yet, the collision occurred. Nothing Bobbie Peters could have said or done would have put her husband in any better position to avoid the collision. No amount of action on the part of the driver or passenger could have prevented the collision— it was inevitable. Because the law holds a passenger to no greater standard of care than a driver, *see Glandon*, 261 Iowa at 755, 156 N.W.2d at 331, we likewise conclude as a matter of law that Bobbie was not contributorily negligent.

Without substantial evidence to support it, the district court erred in submitting the issue of contributory negligence of the passenger to the jury. *See Miller v. International Harvester Co.*, 246 N.W.2d 298, 300–01 (Iowa 1976).

II. *Advance Payments.*

The record evidence shows that the same insurer insured the vehicles of both parties. In his petition, Howser alleged that he made advance payments to Mr. and Mrs. Peters in the amount of $10,440.06 and asked for credit in that amount against any recovery by the couple. Following the procedure we approved in *Ferris v. Anderson*, 255 N.W.2d 135, 138 (Iowa 1977), Howser presented evidence at a hearing on his motion for judgment on the verdict establishing that the insurer paid Mr. and Mrs. Peters a total of $6904.06. The trial court allowed Howser credit in the amount of $2831.78 against Bobbie's favorable judgment. Contrary to Bobbie's contention, we think there was sufficient evidence to support the district court's finding that the in-

surer paid this $2831.78 toward her medical expenses under Howser's liability policy. Accordingly, we hold that the district court was correct in allowing the credit.

### III. *Disposition.*

Because the district court should not have submitted contributory negligence to the jury, it erred. The court was correct, however, in allowing credit against the judgment for the advance payments totaling $2831.78. We hold that we can cure the error by adding back $16,200 (30% times $54,000) to Peters' verdict to restore the full amount of damages, thus modifying the judgment by increasing it to $51,168.22 ($54,000 minus $2831.78). *Cf. Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, 560–61 (Iowa 1980) (on appeal district court's error in allowing as damages amounts paid by collateral sources was cured by remitting the amount of such damages as identified by the jury in its answers to special interrogatories and modifying the judgment accordingly).

We modify Peters' judgment to increase it to $51,168.22, affirm it as modified, and remand with directions to the clerk of the district court to enter judgment accordingly.

AFFIRMED AS MODIFIED AND REMANDED WITH DIRECTIONS.