# IN THE COURT OF APPEALS OF IOWA

No. 4-060 / 13-1127
Filed March 12, 2014

THE ESTATE OF TROY ELLIS
HAAKENSON, By and Through its
Administrator Melissa Haakenson,
MELISSA HAAKENSON, as Parent and
Next Best Friend of STEVEN HAAKENSON
and KRISTINA HAAKENSON, and
MELISSA HAAKENSON, Individually,
        Plaintiffs-Appellants,

vs.

CHICAGO CENTRAL & PACIFIC RAIL
ROAD COMPANY d/b/a ILLINOIS
CENTRAL GULF RAILROAD COMPANY,
GEORGE PETERSON JR. and RICK MABE,
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Black Hawk County, George L.

Stigler, Judge.

        Plaintiffs appeal from a ruling granting summary judgment adverse to

them and in favor of defendants.  **AFFIRMED.**

        Brett J. Beattie of Beattie Law Firm, P.C., Des Moines, for appellants.

        R. Todd Gaffney of Finley, Alt, Smith, Scharnberg, Craig & Gaffney, P.C.,

Des Moines, for appellees.

        Considered by Tabor, P.J., McDonald, J., and Huitink, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MCDONALD, J.**

Melissa Haakenson, on behalf of the estate of her deceased husband Troy Haakenson, as parent and next best friend of her children, and in her individual capacity, filed suit against the Chicago, Central & Pacific Railroad Company, d/b/a the Illinois Central Gulf Railroad Company ("Chicago Central"), as well as two of its employees, George Peterson Jr. and Rick Mabe (collectively, hereinafter "Chicago Central"), after Mr. Haakenson was killed in a vehicle-train crash. The plaintiffs asserted claims for wrongful death, negligence, loss of consortium, and loss of services. The district court granted summary judgment in favor of Chicago Central, concluding that Haakenson's fault in causing the accident was greater than Chicago Central's fault, if any, and therefore recovery was barred pursuant to the Iowa comparative fault act. Further, the district court concluded the plaintiffs' state law claims were preempted by the Federal Railroad Safety Act of 1970, 49 U.S.C. § 20101, et seq., and Federal Highway Administration regulations.

I.

"This court reviews a district court decision to grant or deny a motion for summary judgment for correction of errors at law." *Griffin Pipe Prods. Co., Inc. v. Bd. of Review*, 789 N.W.2d 769, 772 (Iowa 2010). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. The court reviews the evidence in the light most favorable to the nonmoving party." *Id.* The court indulges in every

legitimate inference the evidence will bear in an effort to ascertain the existence of a genuine issue of fact. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). "A fact is material if it will affect the outcome of the suit, given the applicable law." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006). An issue of fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *See Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). If the summary judgment record shows that the "resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment." *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996); *see also* Iowa R. Civ. P. 1.981(3). In addition, summary judgment is correctly granted where the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *See Emmet Cnty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989).

## II.

## A.

On appeal, the parties expend most of their written effort arguing whether plaintiffs' claims are preempted by the Federal Railway Safety Act (hereinafter "FRSA") in combination with regulations promulgated by the Federal Highway Administration pursuant to the Federal-Railway-Highway Crossings Program. By preemption, as used here, we mean that federal law sets the required standard of care with respect to the adequacy of warning devices at rail crossings and disallows state law claims related to the same. *See Norfolk S. Ry. Co. v.*

*Shanklin*, 529 U.S. 344, 358 (2000) (holding state statutory and common law claim regarding adequacy of warning signs and reflectorized crossbucks was preempted). In *Shanklin*, the Supreme Court held that state law relating to the adequacy of warning devices at rail crossings is preempted by federal law on the same subject matter but only when federal funds participate in a rail crossing improvement project that is completed. *See id.* at 353. Subsequent to *Shanklin*, Congress amended the FRSA to clarify the scope of preemption. The amendment provides a savings clause for state law causes of action alleging a party's failure to comply with the federal standard of care or the party's failure to comply with its own plan, rule, or standard of care created pursuant to federal regulation or order. *See* 49 U.S.C. § 20106(b); *Driesen v. Iowa, Chicago & E. R.R. Corp.*, 777 F. Supp. 2d 1143, 1149 (N.D. Iowa 2011). Plaintiffs contend that state law is not preempted where the improvement ceases operating, but the Supreme Court made clear that federal law "displaces state and private decision making authority" once the improvement becomes operational without regard to whether the improvement was actually operating at the time of the accident. *See Shanklin*, 529 U.S. at 354; *see also Anderson v. Wis. Cent. Transp. Co.*, 327 F. Supp. 2d 969, 975 (E.D. Wis. 2004) (stating "once a claim challenging the adequacy of a warning device is preempted, preemption is not erased because the device is not properly maintained").

The central fighting issue between the parties regarding preemption is whether the preemption threshold—the showing that federal funds participated in an approved and completed project—has been met. Chicago Central contends

that the undisputed facts show federal funds were used to improve the railroad crossing at which this accident occurred. The plaintiffs do not so much dispute that Chicago Central has provided affidavits stating that federal funds were used to complete the project at issue. Instead, the plaintiffs contend that the affidavits are not competent because each of the affiants lacks personal knowledge as to whether federal funds actually were used—as opposed to approved to be used—to complete the project as planned. *See* Iowa R. Civ. P. 1.981(5) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify . . . ."); *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96 (Iowa 2012) (stating that court should only consider admissible evidence in evaluating summary judgment). Plaintiffs further contend that the contracts, inventories, and other documents show only that federal funds were approved but do not show the approved funds were actually expended. Although the contract committing the federal government to provide ninety percent of the cost of the improvement seems sufficient to establish funds were used, we need not reach the issue because the Haakensons' claims otherwise fail as a matter of law. *See Thiele v. Norfolk & W. Ry. Co.*, 68 F.3d 179, 184 (7th Cir. 1995) (affirming grant of summary judgment where motorist's claim was not preempted but there was no disputed issue of material fact motorist was more than fifty percent at fault in colliding with train).

B.

The district court found, after viewing the summary judgment record in the light most favorable to plaintiffs, "[t]his accident was 100 percent the fault of Mr. Haakenson, and if not 100 percent his fault, certainly approaching 100 percent." The district court continued:

> Ordinarily, issues of negligence, gross negligence and related claims of the type brought by plaintiff are matters for a trier-of-fact to determine. However, here this court is left with absolutely no conclusion other than even if the railroad company may have been slightly at fault, which there is no evidence of, under no circumstance could a reasonable jury conclude that it was more than 50 percent at fault.

The district court concluded that plaintiffs' claims were thus barred by the comparative fault act. The Haakensons contend that the issues of causation and fault are not appropriate for summary adjudication and should have been sent to the jury. We review the grant of summary judgment for errors at law. *See Griffin Pipe Prods. Co.*, 789 N.W.2d at 772.

The district court did not err in concluding that this case is governed by the comparative fault act, Iowa Code chapter 668. Nor did the district court err in concluding that plaintiffs' claims are barred if Haakenson bore a greater percentage of fault than the combined percentage of Chicago Central. *See* Iowa Code § 668.3(1)(a) ("Contributory fault shall not bar recovery in an action by a claimant to recover damages for fault resulting in death or in injury to person or property unless the claimant bears a greater percentage of fault than the combined percentage of fault attributed to the defendants, third-party defendants

and persons who have been released pursuant to section 668.7."); *Fox v. Interstate Power Co.*, 521 N.W.2d 762, 764 (Iowa Ct. App. 1994) ("Under this modified comparative fault system, if the claimant's percentage of fault is more than fifty percent, the claimant cannot recover damages."). The real question on appeal is whether the district court erred in concluding that plaintiffs failed to generate a disputed issue of material fact on the issue of fault and causation.

"Generally questions of negligence, contributory negligence, and proximate cause are for the jury . . . ." Iowa R. App. P. 6.904(3)(j). "It is only in the plainest cases, in which reasonable minds could come to no other conclusion, that we decide a question of contributory negligence as a matter of law." *Peters v. Howser*, 419 N.W.2d 392, 394 (Iowa 1988). In those plain cases, however, even when operating within a modified comparative fault system, where the undisputed facts admit of a singular and inescapable conclusion that plaintiffs' fault is greater than the combined fault of defendants, the court must grant judgment in favor of the defendants. *See Gagnier v. Bendixen*, 439 F.2d 57, 63 (8th Cir. 1971) (holding that defendant was entitled to directed verdict where reasonable jury could only conclude that plaintiff's fault was greater than defendants). In an exceedingly thorough analysis, the district court concluded that this is one of the plain cases requiring judgment as a matter of law for defendants. We agree.

At approximately 2:15 p.m. on December 11, 2008, Haakenson was driving a pick-up truck southbound on a county road just outside Cleghorn. At that same time, a sixteen-car Chicago Central train pulled by two locomotives

was traveling westbound on tracks that almost perpendicularly intersected, at a marked crossing, the county road on which Haakenson was driving. Although it was mid-December, the driving conditions were good. The day was clear. There was no precipitation. The county road was paved, clear, clean, and dry.

The train and truck continued to approach the fatal intersection. The approved speed limit for the county road was fifty-five miles per hour. Haakenson's vehicle's computer command module indicated he was driving at sixty-three miles per hour. The track at the intersection was approved for travel at sixty miles per hour, but the train was traveling at only forty miles per hour. Peterson and Mabe, two of Chicago Central's employees operating the train that day, spotted Haakenson's truck approximately ten seconds prior to the collision. In compliance with federal regulations and to alert Haakenson, Peterson and Mabe sounded the locomotive horn. When Haakenson did not slow, Peterson and Mabe sounded a series of short bursts of the locomotive whistle and horn to get his attention. Seeing that Haakenson's vehicle was still not slowing, the employees applied the train's emergency brake, but the train still entered the intersection. Haakenson entered the crossing and crashed into the side of the first locomotive. There is no evidence that Haakenson attempted to change course, swerve, or attempt any maneuver to try to avoid the train. In addition, there is no evidence that Haakensen ever attempted to slow or stop his vehicle. No skid marks were found at the scene. The command module in the truck confirmed that Haakenson never braked and impacted the train at sixty-three miles per hour.

The Haakensons contend that a jury could find Chicago Central at greater fault than Haakenson for failing to install a crossing gate and flashing lights at the crossing where there were partial obstructions of the track. The undisputed facts show approximately 700 feet prior to the intersection was a visible sign warning that a railroad crossing was ahead. The exhibit below shows Haakenson would have had a constant, uninterrupted view of the train and crossbucks within at least the last 500 feet of the crossing, giving him more than enough time to stop had he exercised reasonable care:



In the exhibit below is the same view of the intersection at 300 feet, and the train would have been moving from left to right.



Finally, it is undisputed that the train was sounding its whistle and horn for approximately ten seconds prior to entering the intersection.

There is no "genuine" issue of fact here. The singular and inescapable conclusion drawn from the undisputed facts is that had Haakensen exercised reasonable care, he would have seen the sixteen-car train traveling perpendicular to him on a clear day and heard its warning whistles in sufficient time to avoid driving his truck directly and at full speed in to the side of the train. Under similar circumstances, other courts have reached the same conclusion:

> The accident in [a similar] case occurred on the afternoon of a clear day at a railroad crossing in open country. There was evidence to the effect that the driver's view of the approach to the crossing was somewhat obscured by trees and shrubbery. The train approached the crossing at a speed of 45 miles per hour, and the evidence was sufficient to support a finding that the train crew was negligent in failing to give proper warning signals as it approached. On the other hand, the driver of the automobile failed to have his car under proper control so that he was able to stop prior to the collision. The court held that under these circumstances the negligence of the deceased was at least as great as that of the defendant railroad, and the fact that the trees might have obscured his view simply increased his duty of care.
> If he saw the train approaching the intersection and, under the circumstances, attempted to cross the track, he was grossly negligent in precipitating himself into a situation of grave danger. If he attempted to cross without looking before he reached the tracks,

> he was guilty of failure to exercise care in any degree. Plaintiff's failure to exercise any degree of care for his own safety must, of course, be held to be the equivalent at least of the negligence of the motorman.

*Gagnier*, 439 F.2d at 60 (citation omitted); *see Groesch v. Gulf, M. & O. R.R. Co.*, 241 F.2d 698, 700 (7th Cir. 1957) ("A duty devolves upon persons about to cross a railroad track to take proper precaution to avoid accident, to be on the alert for possible danger and not recklessly to go upon the track. One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track upon the assumption that a bell will be rung or a whistle sounded." (citation and internal quotation marks omitted)); *Davis v. Chicago, R. I. & P. R.R. Co.*, 172 F. Supp. 752, 753-54 (S.D. Ill. 1959), *aff'd*, 273 F.2d 434 (7th Cir. 1960) (stating that it is well settled the "law will not tolerate the absurdity of allowing a person to testify that he looked and did not see a train when he could have seen it" and reversing judgment in favor of plaintiff); *Kendrick v. La. & N. W. R.R. Co.*, 766 So. 2d 705, 717 (La. Ct. App. 2000) (reversing judgment and holding that sole cause of accident was driver inattentiveness where driver had unobstructed view of train for 50 feet); *Succession of Theriot v. S. Pac. Transp. Co.*, 560 So. 2d 861, 866 (La. Ct. App. 1990) (holding driver was at fault in collision with "clearly visible oncoming freight train whose whistle is blowing and headlamp is shining"); *Winge v. Minn. Transfer Ry. Co.*, 201 N.W.2d 259, 264 (Minn. 1972) (holding that district court did not err in directing verdict in favor of railroad in concluding that driver's negligence in failing to see train on crossing on clear day exceeded railroad's

negligence in failing to provide adequate warning of crossing and barred recovery under comparative negligence statute); *Jacobs v. Atl. Coast Line R.R. Co.*, 85 S.E. 2d 749, 751-52 (S.C. 1955) (holding driver was negligent in failing to stop where driver could have seen train and heard signals in time to stop); *Carlin v. Thomson*, 12 N.W.2d 224, 228 (Iowa 1943) (reversing jury verdict in favor of plaintiff where "train reached the place of collision first and was run into by the automobile" and where "[i]t is sufficient to say that the plaintiff, coming from behind known and clearly visible obstructions nearly 300 feet from the crossing, should be held to the rule that an ordinarily prudent person would have his car under such control that if he then discovered danger of collision he would be able to stop in time to avert that danger"); *Hitchcock v. Iowa S. Util. Co.*, 6 N.W.2d 29, 31 (Iowa 1942) (holding driver was negligent in crashing into side of train where evidence showed "[a]fter due warning of the proximity of the tracks and the approaching of the train 500 or 600 feet south of the crossing, decedent did not attempt to reduce his speed or proceed with caution toward the crossing until within approximately 250 feet thereof . . . . [and] drove into the danger zone, a position of peril, at a speed that made it impossible for him to avoid the collision"); *Frush v. Waterloo, C.F. & N. Ry. Co.*, 169 N.W. 360 (Iowa 1918) (holding that driver's conduct in colliding with side of train was sole, proximate cause of accident); *Carrigan v. Minneapolis & St. L. R. Co.*, 151 N.W. 1091, 1096 (Iowa 1915) (holding that conduct of plaintiff was sole cause of accident with train despite failure of warning signals).

III.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**