# IN THE COURT OF APPEALS OF IOWA

No. 23-0804
Filed December 4, 2024

**TAMRA BRADLEY and SCOTT BRADLEY,**
    Plaintiffs-Appellants,

**vs.**

**TIMOTHY TIETZ and CAROL TIETZ,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Linn County, Jason D. Besler, Judge.

Plaintiffs appeal the denial of their motion for a directed verdict on comparative fault in a personal-injury trial. **AFFIRMED.**

Matthew M. Boles, Christopher Stewart, Adam C. Witosky, and William G. Brewer of Gribble Boles Stewart & Witosky Law, Des Moines, for appellants.

Thomas F. Ochs and Corinne R. Butkowski of Gray, Stefani & Mitvalsky, P.L.C., Cedar Rapids, for appellees.

Heard by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Only in exceptional cases will courts withhold questions of negligence or contributory negligence from the jury through directed verdicts. Tamra Bradley believes her case should have been one of those rare cases.

Bradley was driving her pickup truck down a residential street when another truck, driven by Timothy Tietz, slowly entered the intersection. Tietz did not have the right of way and did not see Bradley coming. A few seconds later, Bradley and Tietz collided, and a nearby porch camera captured the crash on video. Bradley was injured in the crash. So she sued Tietz for negligence. And at the jury trial, over her objection, the jury considered her comparative fault. After hearing testimony and watching the video, the jury found both Tietz and Bradley at fault for the crash, assigning forty-five percent of the fault to Bradley. Bradley appeals, arguing the district court should have granted a directed verdict on her comparative fault because there was insufficient evidence to find she was negligent.

The district court properly allowed the jury to consider comparative fault. The video shows Bradley traveling at a consistently brisk speed in a residential neighborhood during rainy conditions. True, the crash happened quickly. But it was up to the jury to decide with its common sensibilities whether Bradley's actions were reasonable or if she should have been able to slow down sooner or swerve to avoid or lessen the impact of the crash. And the jury believed Bradley shared some fault in causing the crash. Considering the evidence in the light most favorable to Tietz, there was substantial evidence to support finding Bradley negligent and at least one percent at fault for the crash. We thus affirm the district court's judgment.

I.

On a rainy December afternoon in 2018, Bradley was driving down 35th Street in a residential area of Marion. The street had three lanes—the middle of which was a turn lane—with flat and wide-open grassy rights-of-way on either side. Bradley approached an intersection at McGowan Boulevard—she did not have a stop sign, there were no traffic lights, and she had the right of way. Around the same time, Tietz was driving his truck along McGowan Boulevard and stopped at a stop sign at the 35th Street intersection. Despite not having the right of way, Tietz began to drive across 35th Street—he did not see Bradley coming. A few seconds later, Bradley crashed into Tietz's truck in the middle of the intersection. Bradley was taken to the hospital for her injuries from the collision.

Bradley later sued Tietz.[1] Before trial, Bradley moved in limine to preclude Tietz from raising a comparative-fault defense. According to Bradley, there was no evidence showing she was negligent, so comparative fault should play no role in her case. The district court denied the motion, finding this was not a "unique circumstance" where comparative fault should be withheld from the jury. The court reasoned that because the "video speaks for itself," the jury could watch the event, assess Bradley's speed relative to the weather conditions, consider whether Bradley should have seen Tietz's truck sooner, whether she could have braked sooner, and otherwise come to its own conclusions about ordinary care and fault.

---

[1] Bradley's husband, Scott, brought a loss-of-consortium claim and the Bradleys also sued Tietz's insurance company and the truck's owner—Tietz's wife, Carol. For ease, we refer to the parties as Bradley and Tietz.

Over the four-day trial, the jury watched the seventeen-second video several times. As the video starts, Tietz's red truck is stopped at the stop sign. Then, Tietz's red truck slowly enters the intersection while Bradley's truck is still far enough away that she is not yet captured on the porch camera. Bradley's truck appears in the video at about the three-second mark traveling down 35th Street at what appears to be a consistently brisk speed. Her truck does not seem to slow down until reaching a cross-walk just before the intersection. As Bradley's truck enters the intersection, Tietz's truck is still slowly crossing the intersection—clear of the first lane of traffic but still blocking the lane Bradley was driving in and part of the middle lane. So her truck crashes into Tietz's back passenger door in the middle of the intersection about three or four seconds after Bradley's truck is first shown on the video—and about five seconds after Tietz's truck first starts moving from the stop sign. The impact spins Teitz's truck around and slams it into another car waiting to cross the intersection from the other side. Throughout the video's seventeen seconds, no other cars or trucks are shown traveling from either direction on 35th Street.

To add context to the video, the jury heard testimony from Bradley, Tietz, and a police officer who arrived at the scene after the crash. Bradley confirmed it was rainy and she was using her windshield wipers. She testified that the speed limit was thirty-five miles per hour and she believed she was driving about that fast. Bradley was not sure why she did not see Tietz entering the intersection sooner, as she recalled looking right and left as she approached the intersection. And she agreed her view of the intersection was not obstructed because it was a wide open area. She testified that "[a]ll of a sudden, there was a big red truck" and "when I

realized that his truck was right there, I don't remember anything after until I kept hearing this blaring of a horn" and she realized the airbags had deployed and "[e]verything was on the floor."

The investigating officer did not witness the crash, but testified to what he could observe from the video. Relevant here, the officer believed the video showed that Bradley did not apply her brakes until she reached the intersection's crosswalk—just a few feet before colliding with Tietz. Neither did Bradley swerve to avoid Tietz, despite no oncoming traffic. And the officer clarified that while Bradley "could have been" distracted, he could not say for certain. Still, he agreed that Bradley should have been "able to at least attempt to avoid" the collision.

As for Tietz's testimony, he explained that he looked both ways before entering the intersection and did not see Bradley coming. He also confirmed he pleaded guilty to a traffic offense for failing to yield. And while he accepted "a certain amount of fault" for the accident, he believed Bradley also bore "some responsibility."

At the close of evidence, Bradley moved for a directed verdict on comparative fault. She argued her minimal response time foreclosed any negligence and that no trial testimony suggested she was at fault. The court denied the motion. Viewing the evidence in the light most favorable to Tietz, the court explained that the video showed Tietz entering the intersection while Bradley was far enough away that she was not seen on video. Yet despite that distance, Bradley could not explain why she did not see him enter the road until just before the collision. And again, it was for the jury to watch the video and assess the totality of the event—including the weather, Bradley's speed, the viability of braking

or swerving, and Tietz's visibility—to determine whether Bradley was negligent and could bear any percentage of fault for the collision.

The jury ultimately found Tietz liable for negligence and found damages of $33,292.68—$18,292.68 for past medical expenses and $15,000 for past pain and suffering. When comparing fault, the jury found Tietz fifty-five percent at fault and Bradley forty-five percent at fault. And so, the district court entered judgment against Tietz for $18,310.97—fifty-five percent of Bradley's damages. Bradley did not move for a new trial disputing whether the jury's forty-five-percent-fault finding was supported by sufficient evidence. *See* Iowa R. Civ. P. 1.1004(6). Instead, she filed a notice of appeal a few hours after the district court entered judgment on the verdict.

## II.

Bradley argues there was insufficient evidence to submit the comparative-fault issue to the jury and the district court thus should have granted her motion for directed verdict. We review directed-verdict denials for correction of errors at law. *Crow v. Simpson*, 871 N.W.2d 98, 105 (Iowa 2015). On our review, we consider "the evidence in the light most favorable to the nonmovant and determine whether sufficient evidence existed to warrant submission of the issues to a jury." *James v. Burlington N., Inc.*, 587 N.W.2d 462, 464 (Iowa 1998). When "reasonable minds could reach different conclusions based upon the evidence presented, the issue is properly submitted to the jury." *Wolbers v. The Finley Hosp.*, 673 N.W.2d 728, 734 (Iowa 2003).

Comparative fault is a creature of statute. "At common law, a plaintiff's contributory negligence was a complete bar to recovery." *Mulhern v. Cath. Health*

*Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011). In 1984, the legislature adjusted that regime and enacted the Comparative Fault Act. *See* 1984 Iowa Acts ch. 1293 (codified, as amended, at Iowa Code chapter 668 (2020)). Under our comparative-fault scheme, "defendants pay in proportion to their fault," and plaintiffs' recoveries are also reduced in proportion to their share of fault, if any. *Godbersen v. Miller*, 439 N.W.2d 206, 208 (Iowa 1989). And if a plaintiff "bears a greater percentage of fault than the combined percentage of fault attributed to the defendants, third-party defendants," and released parties, then the plaintiff is barred from recovery. Iowa Code § 668.3(1)(a). Parties may be at "fault" if they commit "one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability." *Id.* § 668.1(1).

Consistent with the statutory definition of fault, the jury considered Bradley's potential fault under a negligence theory. The jury was instructed that it could find Bradley at fault if she failed "to keep a proper lookout," failed "to travel at a reasonable and proper speed when approaching an intersection," or otherwise failed "to exercise ordinary care." Bradley insists there was insufficient evidence to send the comparative-fault issue to the jury, as only speculative evidence suggests she was negligent.

"It is only in the plainest cases, in which reasonable minds could come to no other conclusion, that we decide a question of contributory negligence as a matter of law." *Peters v. Howser*, 419 N.W.2d 392, 394 (Iowa 1988); *see also* Iowa R. App. P. 6.904(3)(j) ("Generally questions of negligence and contributory

negligence are for the jury; it is only in exceptional cases that they may be decided as matters of law.").

Peters is one such exceptional case.  See Peters, 419 N.W.2d at 394. There, a husband was driving with his wife down a two-lane highway during a winter storm.  Id.  The husband tried to pull over to the side of the road, but as he was pulling over, he and his wife observed "headlights barreling down" toward them.  Id.  In response, the husband pulled over as far as he could—right up against the snow along the side of the road.  Id. at 395.  The driver of the oncoming car had swerved into their lane to avoid a snowdrift and continued straight down the wrong side of the road—ultimately colliding with the husband and wife's car. Id. at 393.  The husband and wife sued the driver, and the wife's claim proceeded to a jury trial.  Id.  The jury was instructed on comparative fault and considered whether the wife negligently failed to keep a proper lookout or failed to warn her husband of the oncoming car.  Id. at 393–94.  The jury found the wife thirty percent at fault.  Id. at 394.  On appeal, our supreme court reversed, finding no evidence to show the wife was contributorily negligent.  Id. at 395.

Distinguishing this case from Peters is illustrative.  The collision in Peters was "inevitable"—the husband had pulled over as far out of the way as the snow would allow.  Id.  All that was left to do was hope the oncoming driver changed course.  Here, conversely, the video shows no similar constraints on Bradley's ability to maneuver—there were no pedestrians, oncoming cars, or road barriers. True, Bradley had only a few seconds to react.  But without any expert testimony, Bradley left her claim to be resolved by the jury's common sensibilities about what

was reasonable or possible under the circumstances. And the jury did not agree this crash was inevitable.

Bradley points us to another "exceptional" case, *Marcey-Fleming v. Duysen*, No. 99-0119, 2000 WL 1052014, at *1 (Iowa Ct. App. July 26, 2000). There, a woman was driving down the road when a pickup truck entered the intersection. *Marcey-Fleming*, 2000 WL 1052014, at *2. Two seconds later, the woman crashed into the truck. *Id.* Just before the collision, the woman "made some attempt to veer to her right." *Id.* At trial, the truck driver argued that had she veered left, she could have avoided the crash. *Id.* The jury found the woman thirty percent at fault. *Id.* at *1. She appealed, arguing there was insufficient evidence to instruct the jury on comparative fault. *Id.* A panel of this court agreed. *Id.* at *2. The panel found the woman was not speeding, veering left would have turned her into possible oncoming traffic, and the collision occurred "in a matter of seconds." *Id.* Thus, there was not enough evidence to send comparative fault to the jury. *Id.*

Yet here, the video shows Bradley traveling at a brisk speed down a misty, residential street. Bradley testified to driving thirty-five miles per hour and insists she was therefore not speeding. But the jury could have believed she was still traveling too fast for the weather conditions or as she approached an intersection. Bradley also never veered in any direction before colliding with Tietz, nor did she begin braking until she reached the crosswalk of the intersection. Her actions, coupled with her testimony that she "did not see his vehicle," went directly to whether she kept a proper lookout—another theory of fault that the jury was instructed to consider. And while the crash indeed happened quickly, that fact was

one of several factors for the jury to weigh when assessing whether Bradley acted with ordinary care under the circumstances.

Bradley also relies on *Bannister v. Dale*, 109 N.W.2d 626 (Iowa 1961). There, a teenager was driving down a gravel road with no stop sign. *Bannister,* 109 N.W.2d at 628. A man was driving down an intersecting road and did not have the right of way through the intersection. *Id.* The man entered the intersection and, upon seeing the teenager's car, "stepped on the gas to try to beat her through the intersection." *Id.* He did not beat her—the teenager collided into the side of his car. *Id.* The teenager suffered injuries and sued the man for negligence. *Id.* Because the case was tried under the common-law approach to contributory negligence, the man moved for the trial court to rule "as a matter of law [the teenager] was contributorily negligent and therefore could not recover." *Id.* at 627–28. The court declined and submitted the contributory-negligence question to the jury. *Id.* at 629. The jury found the man liable, and he appealed. *Id.* at 627–28.

Our supreme court held that, under those facts, the "issue of freedom from contributory negligence was one of fact for the jury, not of law for the court." *Id.* at 628. "It is only the exceptional case in which the issue of freedom from contributory negligence should not be submitted to the jury—only where contributory negligence is so palpable that reasonable minds may fairly reach no other conclusion." *Id.* Viewing the facts in the light most favorable to the teenager, the jury could have found that by the time the teenager should have seen the man's car, it was too late to avoid the crash. *Id.* at 629. This was especially true in light of prior cases holding "a motorist is not ordinarily to be charged with negligence

where he is faced with an emergency not of his own making and has only two or three seconds to make a decision." *Id.* So this was "not the exceptional case in which reasonable minds could fairly reach no other conclusion than that plaintiff was contributorily negligent" and the "issue was properly submitted to the jury." *Id.*

Bradley zeroes in on her similarly limited response time and insists *Bannister* forecloses any question of contributory negligence. But Bradley misses *Bannister*'s broader principle—this is a question for the jury. That a jury, viewing the evidence in the light most favorable to the teenager, could reasonably find the teenager free of negligence does not require that we declare Bradley free of negligence as a matter of law. *See id.* at 629. To the contrary, we must view the evidence in the light most favorable to Tietz—not Bradley. And taking that view, the video contains sufficient evidence for a jury to find Bradley failed to exercise ordinary care and was partially at fault.

To be sure, reasonable minds could have considered Tietz's failure to yield and Bradley's quick response time and declined to find Bradley negligent. But directed verdicts turn on whether "there is substantial evidence in the record such that a reasonable trier of fact could find for" the nonmoving party.[2] *Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 254 (Iowa 1993). And comparative fault allows the jury to apportion any percentage of fault between the parties. Iowa Code § 668.3(1)–(3). Thus, at the directed-verdict stage, so long

---

[2] This standard of review is the same regardless of whether the key evidence is a video. *See* Eric J. Magnuson & Samuel A. Thumma, *"Same As It Ever Was": Why Audio-Video Recordings In and of Trial Court Proceedings Should Not Change the Standard of Appellate Review*, 24 J. App. Prac. & Proc. 213, 215 (2024) ("[T]he format of evidence being challenged or providing the basis for a challenge on appeal should not alter the standard of appellate review.").

as substantial evidence could support finding Bradley even one percent at fault for the crash, the issue should be submitted to the jury. *See, e.g.*, *Johnson v. Junkmann*, 395 N.W.2d 862, 864–65 (Iowa 1986) (restoring jury verdict finding driver three percent at fault for a collision when the driver was stopped in her own lane, was struck by another car, and was involuntarily propelled forward into the collision, because the jury could have found that having her vehicle and front wheels positioned at an angle while she was stopped, rather than straight forward, was negligent).

Through that lens, the district court properly denied Bradley's motion for directed verdict. The jury was free to disregard testimony speculating about whether Bradley was distracted or multitasking and instead focus on the video. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993); *see also Ransdell v. Huckleberry Ent., LLC*, No. 19-0545, 2020 WL 5650728, at *7 (Iowa Ct. App. Sept. 23, 2020) (reasoning "it was fortuitous that the accident was captured on video" and holding that the video could support submission of comparative fault without expert testimony given that the case was "not complicated" and jurors could "understand what constitutes appropriate behavior while driving a go-kart"). And that video—showing Bradley's general rate of speed, the weather conditions, the time leading to the crash, and the visibility of Tietz's truck—contains sufficient evidence for a reasonable jury to find Bradley negligent and partially at fault for the collision.

**AFFIRMED.**